Filed 2/5/15  Certified for publication 3/4/15 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JESSICA GONZALEZ,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>FIRE INSURANCE EXCHANGE et al.,<br><br>    Defendants and Respondents. | H039368<br>(Santa Clara County<br>Super. Ct. No. 1-11-CV215537) |

In 2007, plaintiff Jessica Gonzalez alleged she was sexually assaulted by Stephen Rebagliati and nine other members of the De Anza College baseball team.  A year later, Gonzalez filed a civil lawsuit against her purported assailants.  Rebagliati sought insurance coverage for his defense against Gonzalez's claims through his parents' homeowner's and personal umbrella policies, issued by respondents Fire Insurance Exchange (Fire) and Truck Insurance Exchange (Truck).  Both companies denied coverage.  Eventually, Rebagliati settled with Gonzalez, assigning Gonzalez his rights against Fire and Truck.  Gonzalez subsequently filed a complaint against the insurers for breach of the duty of good faith and fair dealing and breach of contract.  She also sought recovery of judgment pursuant to Insurance Code section 11580.  Fire and Truck moved for summary judgment, arguing they had not owed Rebagliati a duty to defend.  The trial court granted their motion for summary judgment.

On appeal, Gonzalez argues the trial court erred in granting summary judgment, because there was a potential for coverage in her underlying action against Rebagliati due

to her allegations of accidental bodily injury, false imprisonment, invasion of privacy, and slander. She also contends Truck's umbrella policy is broadly worded and does not require an "accident" for personal injury coverage. We conclude summary judgment was properly granted in favor of Fire, because none of Gonzalez's claims can be construed to allege an accidental occurrence triggering insurance coverage. However, we find the trial court erred in granting summary judgment in favor of Truck, as the insurer failed to conclusively demonstrate its policy exclusions eliminated all potential for coverage. We therefore reverse the order granting summary judgment and remand to the trial court for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

*Gonzalez's Civil Lawsuit against Rebagliati*

On March 3, 2008, Gonzalez filed a civil lawsuit against Rebagliati and nine other individuals. Her complaint contained multiple preliminary allegations that were incorporated by reference in all of her causes of action. These allegations included the following: On March 3, 2007, Gonzalez, who was 17 years old at the time, was invited to a party held by several members of the De Anza College baseball team, including Rebagliati. Upon her arrival, she was given shots of hard liquor in quick succession. Later that night, she was assaulted by an unknown number of men as she lay unconscious in a room. Three women who witnessed the assault attempted to help her but were prevented by men inside the room. Gonzalez's complaint alleged that Rebagliati, along with several other named defendants, was inside the room where she was assaulted. Eventually, the women broke through the doors and helped Gonzalez to a hospital where she received medical attention. Some of the men in the room took videos, photographs, and cheered while the assault took place.

In total, the complaint alleged 15 causes of action, including causes of action for negligence for failing to rescue Gonzalez from the assault, negligence for inviting her to

2

the party, negligence for serving her alcohol, false imprisonment, invasion of privacy, slander per se, battery, sexual battery, rape, unlawful intercourse, forcible acts, oral copulation, and conspiracy. Her cause of action for slander per se alleged the defendants had told others that she had consented to the sexual assault in the subsequent days and months following the party. All of the causes of action were pleaded as to Rebagliati "and/or each" of the other named defendants, except for a single cause of action for negligence alleged against Steve Rebagliati.

*The Fire Homeowner's Insurance Policy*

Rebagliati was covered by a homeowner's policy issued by Fire. The policy contained the following agreement: "We pay those damages which an insured becomes legally obligated to pay because of bodily injury, property damage or personal injury resulting from an occurrence to which this coverage applies. Personal injury means any injury arising from: [¶] (1) false arrest, imprisonment, malicious prosecution and detention. [¶] (2) wrongful eviction, entry, invasion of rights of privacy. [¶] (3) libel, slander, defamation of character. [¶] (4) discrimination because of race, color, religion or national origin. Liability prohibited by law is excluded. Fines and penalties imposed by law are covered. [¶] At our expense and with attorneys of our choice, we will defend an insured against any covered claim or suit." (Emphasis omitted.)

As defined by the policy, "[o]ccurrence means an accident including exposure to conditions which results during the policy period in bodily injury or property damage. Repeated or continuous exposure to the same general conditions is considered to be one occurrence. [¶] Occurrence does not include accidents or events which take place during the policy period which do not result in bodily injury or property damage until after the policy period." (Emphasis omitted.)

The Fire policy set forth certain exclusions. It specifically provided exclusions for "bodily injury, property damage or personal injury . . . caused intentionally by or at the

3

discretion of an insured" or resulted "from any occurrence caused by an intentional act of any insured where the results are reasonably foreseeable."

The policy also stated it would not "cover actual or alleged injury or medical expenses caused by or arising out of the actual, alleged, or threatened molestation of a child by: [¶] 1. any insured; or [¶] 2. any employee of any insured; or [¶] 3. any volunteer, person for hire, or any other person who is acting or who appears to be acting on behalf of any insured." (Emphasis omitted.)

Additionally, the policy excluded coverage for personal injury "caused by a violation of penal law or ordinance committed by or with the knowledge or consent of any insured."

*The Truck Umbrella Policy*

Truck issued an umbrella insurance policy covering Rebagliati, which listed the Fire homeowner's policy on its schedule of underlying insurance. Truck's coverage policy stated it would pay damages resulting from an "occurrence," and it would "defend any insured for any claim or suit that is covered by this insurance but not covered by other insurance." The Truck policy defined an "occurrence" as "a. with regard to bodily injury or property damage, an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results in bodily injury or property damage during the policy period; or [¶] b. with regard to personal injury, offenses committed during the policy period, even if the resulting injury takes place after the policy expires."

Bodily injury was defined as "bodily harm to, sickness or disease of any person. This includes death, shock, mental anguish or mental injury that result from such bodily harm, sickness or disease." Personal injury was defined as injury arising out of several enumerated torts, including "a. false arrest, wrongful detention or imprisonment, or malicious prosecution; [¶] b. wrongful eviction, wrongful entry, or invasion of the right

4

of private occupancy; or [¶] c. libel, slander, defamation of character or invasion of privacy."

The Truck policy stated "[i]f a claim is made or suit is brought for damages excluded from coverage under this policy, we have no obligation to defend such claim or suit. If underlying insurance does not cover damages covered by this policy, we will: [¶] . . . defend the insured against any covered claim or suit."

The policy included exclusions similar to those set forth in the Fire policy. The Truck policy excluded damages "[e]ither expected or intended from the standpoint of an insured." The policy also excluded damages "[a]rising out of corporal punishment, molestation or abuse of any person by any" insured individual. It also excluded coverage for "personal injury arising out of oral or written publication of material when a willful violation of a penal statute or ordinance has been committed by or with the consent of the insured."

*Fire and Truck's Denial of Coverage*

On June 19, 2008, Rebagliati's father sent a copy of the complaint filed by Gonzalez to Farmer's Insurance. Lisa Le, a special general adjuster for Fire and Truck, was assigned Rebagliati's claim. Le pulled copies of the Fire and Truck policies and consulted with coverage counsel.

On July 30, 2008, Le wrote to Rebagliati's attorney, denying coverage for Rebagliati's defense on the grounds that "(1) none of the alleged conduct was the result of an 'accident' and thus, there was no 'occurrence' as required by the [Fire] Homeowners Policy; (2) all of the claims were excluded by the [Fire] Policy's Sexual Molestation Exclusion because they were all inextricably intertwined with the actual, alleged, or threatened sexual misconduct, sexual molestation, or physical or mental abuse of a minor; (3) the [Fire] Policy excluded coverage for claims for punitive damages; and (4) the claims all involved willful conduct and were excluded pursuant to the [Fire]

5

Policy's intentional acts exclusion as well as by Insurance Code section 533." Le also explained that coverage was denied under the Truck policy for the same reasons.

Rebagliati's attorney sought reconsideration of the denial, and Gonzalez's complaint was forwarded to coverage counsel for analysis. In October 2008, Fire's coverage counsel, Lawrence Guslani, wrote to Rebagliati's attorney and denied coverage on the same grounds previously given. A month later, Rebagliati's attorney again sought reconsideration of the denial. Guslani wrote back in February 2009, reiterating that coverage was denied because the allegations against Rebagliati were for sexual assault and other nonaccidental conduct.

In August 2009, Rebagliati's attorney again tendered the defense to Fire and Truck. Guslani wrote to Rebagliati's attorney and denied coverage.

*The Bad Faith Action and Summary Judgment*

Later, Rebagliati entered into a confidential settlement agreement with Gonzalez. As part of the agreement, Rebagliati assigned Gonzalez his contractual rights against Fire and Truck. Rebagliati further agreed to entry of judgment in the underlying action against him and in favor of Gonzalez.

In December 2011, Gonzalez initiated a bad faith action against Fire and Truck over their denial of coverage for Rebagliati's defense.[1] Gonzalez alleged causes of action for breach of the duties of good faith and fair dealing, breach of contract, and sought direct recovery of judgment.

Both insurance companies moved for summary judgment, which the trial court granted on November 26, 2012, after finding the companies did not owe Rebagliati a duty

---

[1] State Farm General Insurance Company (State Farm) was a party to the bad faith lawsuit filed by Gonzalez, but is not a part of this appeal.

6

to defend based on Gonzalez's complaint.  On December 18, 2012, judgment was entered in favor of Fire and Truck, and Gonzalez appealed.[2]

## STANDARD OF REVIEW

We review the trial court's grant of summary judgment under a de novo standard of review.  (*Monticello Ins. Co. v. Essex Ins. Co.* (2008) 162 Cal.App.4th 1376, 1385.)  Summary judgment is granted if all the moving papers show there is no triable issue of any material facts, and the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c).)  Defendants are entitled to summary judgment if a necessary element of plaintiff's complaint cannot be established or if there is a complete defense to the plaintiff's cause of action.  (*Id.*, subd. (o)(2).)  In reviewing a grant of summary judgment in favor of the defendant, as in this situation, we must review the entire record de novo and determine whether the defendant " 'conclusively negated a necessary element of the plaintiff's case or demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial.' " (*WYDA Associates v. Merner* (1996) 42 Cal.App.4th 1702, 1709.)

## DISCUSSION

Gonzalez contends the trial court erred in granting summary judgment in favor of Fire and Truck, because the insurers erroneously refused to defend Rebagliati against the claims asserted in her civil complaint.  Whether there was a duty to defend hinges upon the language of the insurance policies in question.  Since Rebagliati was covered by two different policies (the homeowner's insurance policy issued by Fire and the umbrella

---

[2] The judgment entered against Gonzalez in favor of Fire and Truck is appealable even though other causes of action remained against State Farm.  This is because the judgment was final as to Fire and Truck.  (See *Culligan v. State Comp. Ins. Fund* (2000) 81 Cal.App.4th 429, 433.)

insurance policy issued by Truck) that do not have identical provisions, we will analyze the insurers' duty to defend separately.

1. *Legal Framework*

" '[A] liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity.' " (*Quan v. Truck Ins. Exchange* (1998) 67 Cal.App.4th 583, 590 (*Quan*).) " ' "[T]he carrier must defend a suit which *potentially* seeks damages within the coverage of the policy." [Citation.] Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded. [Citations.]' [Citation.] 'The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint also give rise to a duty to defend when they reveal the possibility that the claim may be covered by the policy.' " (*Id.* at p. 591.)

This legal framework shapes a party's burden when seeking summary judgment. (*Vann v. Travelers Companies* (1995) 39 Cal.App.4th 1610, 1614.) "To prevail [on the duty to defend issue], the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*. In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*. Facts merely tending to show that the claim is not covered, or may not be covered, but are insufficient to eliminate the possibility that resultant damages (or the nature of the action) will fall within the scope of coverage, therefore add no weight to the scales. Any seeming disparity in the respective burdens merely reflects the substantive law." (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 300.)

"The *Montrose* court reiterated . . . that ' "the insurer need not defend if the third party complaint *can by no conceivable theory raise a single issue which could bring it*

8

*within the policy coverage*." ' [Citations.] [¶] Nevertheless, the obligation to defend is not without limits. 'Rather, such a duty is limited by "the nature and kind *of risk covered by the policy*." ' [Citations.] ' "[T]he duty to defend derives from the insurer's coverage obligations assumed under the insurance contract." [Citation.] Thus, "where there is *no potential* for coverage, there is no duty to defend." ' " (*Quan*, *supra*, 67 Cal.App.4th at pp. 591-592, fn. omitted.)

A complaint is to be liberally construed in favor of potential coverage. (*Waller v. Truck Ins. Exchange*, *Inc.* (1995) 11 Cal.4th 1, 23, 44.) "Since pleadings are easily amended, the proper focus is on the facts alleged, rather than the theories for recovery. [Citation.] However, the insured ' "may not speculate about unpled third party claims to manufacture coverage" ' [citation], and the insurer has no duty to defend where the potential for liability is ' "tenuous and farfetched." ' [Citation.] The ultimate question is whether the facts alleged 'fairly apprise' the insurer that the suit is upon a covered claim." (*Michaelian v. State Comp. Ins. Fund* (1996) 50 Cal.App.4th 1093, 1106.)

"[W]hen an insurer seeks summary judgment on the ground the claim is excluded, the burden is on the insurer to prove that the claim falls within an exclusion." (*Brodkin v. State Farm Fire & Casualty Co.* (1989) 217 Cal.App.3d 210, 216.) In contrast, "[a]n insured has the burden of proving its claim falls within the scope of the policy's basic coverage, even where the insurer brings a motion for summary judgment." (*Roberts v. Assurance Co. of America* (2008) 163 Cal.App.4th 1398, 1407.)

"In determining whether a duty to defend exists, courts look to all the facts available to the insurer at the time the insured tenders its claim for a defense. . . . The court must look 'not to whether noncovered acts predominate in the third party's actions, but whether there is *any* potential for liability under the policy.' [Citation.] 'Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor.' " (*Vann v. Travelers Companies*, *supra*, 39 Cal.App.4th at pp. 1614-1615.)

9

When a complaint states multiple claims, some of which are potentially covered by the insurance policy and some of which are not, it is a mixed action. In these cases, "the insurer has a duty to defend as to the claims that are at least potentially covered, having been paid premiums by the insured therefor, but does not have a duty to defend as to those that are not, not having been paid therefor." (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 48.) However, in a " 'mixed' action, the insurer has a duty to defend the action in its entirety." (*Ibid.*) Thereafter, the insurance company is entitled to seek reimbursement for the cost of defending the claims that are not potentially covered by the policy. (*Id.* at p. 53.) Therefore, if even one of Gonzalez's claims against Rebagliati triggered a duty to defend under the insurers' respective policies, Fire and Truck were required to provide him a defense.

2. *The Fire Homeowner's Insurance Policy*

a. **Definition of an "Occurrence"**

Gonzalez contends Fire refused to defend Rebagliati based on an erroneous interpretation of the term "occurrence" under the policy.[3] Gonzalez argues that because the policy defined "occurrence" relative only to "bodily injury" with no mention of whether it applies to a "personal injury," certain personal injury offenses including intentional torts such as false imprisonment and slander are clearly anticipated and should receive coverage. We disagree.

---

[3] Fire and Truck contend we should not address these arguments because Gonzalez failed to raise them below. However, when "an appeal raises a question of law on undisputed facts, the issue has not been forfeited." (*Winchester Mystery House, LLC v. Global Asylum, Inc.* (2012) 210 Cal.App.4th 579, 594.) It is well-settled that "[i]nterpretation of an insurance policy presents a question of law governed by the general rules of contract interpretation." (*Davis v. Farmers Ins. Group* (2005) 134 Cal.App.4th 100, 104.) Here, the parties do not dispute the terms of the Fire policy in question, only the interpretation of the policy, which is a question of law. We therefore conclude Gonzalez has not forfeited her contentions on appeal.

The Second Appellate District considered the exact same argument regarding the definition of an "occurrence" in *Lyons v. Fire Ins. Exchange* (2008) 161 Cal.App.4th 880 (*Lyons*). The policy language at issue in *Lyons* was identical to the Fire policy at issue here. Lyons, like Gonzalez, contended that the limitation of coverage to accidents did not apply to the policy's definition of "personal injury." (*Id*. at p. 886.) The court concluded this interpretation of the policy inappropriately read the words " 'resulting from an occurrence' out of the phrase 'personal injury resulting from an occurrence.' " (*Ibid*.)

The Second Appellate District noted the insurance policy in question unequivocally defined an "occurrence" as an "accident." (*Lyons*, *supra*, 161 Cal.App.4th at p. 887.) "The clause that Lyons focuses upon--'which results during the policy period in bodily injury or property damage'--merely imposes an additional temporal limitation on bodily injury and property damage, to the effect that any resulting injuries must occur within the policy period. By contrast, although the personal injury coverage is also limited to accidents, it has no temporal limitation. Rather, the specified personal injury torts are covered so long as they involve accidents committed *during* the policy period, regardless of whether the injury occurred during or after the policy period. Indeed, this is a timing distinction that is well recognized in insurance policies." (*Ibid*.)

The court further concluded that Lyons' interpretation of the policy would "remove a necessary element of the policy's basic coverage grant, and thus result in improperly rewriting the clear language of the contract. [Citations.] Also, such a reading would be contrary to the rule that all words in a contract are to be given meaning (see Civ. Code, § 1641), with the language in the contract 'interpreted as a whole.' " (*Lyons*, *supra*, 161 Cal.App.4th at p. 886.) The court therefore found that an "occurrence" was defined as an "accident," a definition that applied to bodily injury, property damage, and personal injury. (*Id*. at pp. 886-887.)

11

Gonzalez contends the *Lyons* decision is flawed because it ignored the language in the policy that provided an occurrence "does not include accidents or events" that take place during the policy period that do not result in bodily injury or property damage. We disagree, and find the reasoning in *Lyons* persuasive. Gonzalez's interpretation of the policy language misreads the terms. The policy language indicating that an occurrence "does not include" certain "accidents or events" does not mean that an occurrence *does* include both accidents *and* events. Given our conclusion that the Fire policy only requires the company to indemnify--and therefore defend--"occurrences," which are defined as accidents, we turn next to Gonzalez's contention that her complaint alleged covered accidental acts.

**b. Duty to Defend "Accidental" Acts of the Insured**

Gonzalez contends her complaint against Rebagliati broadly alleged negligent and accidental conduct that raise the potential for coverage under the Fire policy. She claims that in her cause of action for negligence, her complaint presented the possibility that "the *only thing* Rebagliati did was enter the room, or the *only thing* he did was witness conduct of others, or that the *only thing* he did was create a dangerous condition." Similarly, she insists that in her cause of action for false imprisonment, her complaint "raised the potential that Rebagliati engaged in conduct amounting to false imprisonment, a personal injury peril specifically covered by the [Fire] policy." Gonzalez additionally maintains her causes of action for invasion of privacy and slander per se should have come within the Fire policy's personal injury coverage.

In *Quan*, the Second Appellate District contemplated a similar issue after a trial court sustained an insurance company's demurrer to an insured's complaint alleging causes of action for bad faith. (*Quan*, *supra*, 67 Cal.App.4th at pp. 586-587.) The underlying complaint had alleged the insured assaulted and raped the claimant, and also

12

alleged causes of action for negligence and negligent infliction of emotional distress. (*Id.* at p. 593.)

The *Quan* court noted "[i]t is common to hear the argument that if the underlying complaint alleges negligence, there must be a duty to defend. This is not necessarily true. The duty to defend depends upon the coverage provided by the policy--the 'nature and kind of risk covered'--which in turn depends upon the wording of the coverage clauses." (*Quan*, *supra*, 67 Cal.App.4th at p. 595.) The *Quan* court determined the insurance policy's coverage of bodily injuries was restricted to damages arising from an "occurrence," which was defined as an "accident." (*Ibid.*) The court further explained that "[t]o avoid the consequences of the conclusion that no 'accident' has been alleged, the insured argues he might be found merely 'negligent,' or may be found to have mistakenly believed the claimant had 'consented.' " (*Id.* at p. 596.)

The Second Appellate District rejected this argument, noting there was a " 'misapprehension that all claims for negligence must at least potentially come within the policy and therefore give rise to a duty to defend. That is not so . . . . "Negligent" and "accidental" are not synonymous . . . .' " (*Quan*, *supra*, 67 Cal.App.4th at p. 596, quoting *American Internat. Bank v. Fidelity & Deposit Co.* (1996) 49 Cal.App.4th 1558, 1572-1573.) " 'An accident . . . is never present when the insured performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces the damage.' " (*Quan*, *supra*, at p. 598, italics removed, quoting *Merced Mutual Ins. Co. v. Mendez* (1989) 213 Cal.App.3d 41, 50.) Intentional acts are not accidents, even if the act causes unintended harms. (*Quan*, *supra*, at p. 600.)

*Quan* concluded there was no theory available on the facts alleged in the complaint that could show the insurance company was liable "for physical injuries caused by 'accidentally' touching, kissing, embracing or having sex with the claimant, nor is there any additional 'happening' to combine with these necessarily deliberate acts so as

13

to produce an 'accident' giving rise to bodily injury. There is thus no potential liability for 'bodily injury' caused by an 'occurrence' and no duty to defend." (*Quan*, *supra*, 67 Cal.App.4th at pp. 600-601.)

Like *Quan*, the issue here is whether the acts alleged in the complaint were accidental and therefore a covered "occurrence" under the Fire homeowner's policy. We conclude that despite Gonzalez's assertion that her pleadings raised the potential for coverage by alleging "accidental bodily injury," her claims of negligence do not constitute an "accident" under the definition set forth in *Quan*.

Gonzalez's complaint alleged several preliminary allegations that were incorporated into all of her causes of action. She alleged that Rebagliati was inside the room when she was sexually assaulted.[4] Additionally, she alleged that while she was sexually assaulted, several women attempted to rescue her from the situation but were prevented by the men in the room.

Despite these allegations, Gonzalez maintains her complaint alleged *accidental* conduct. We disagree. First, Gonzalez claimed Rebagliati may have been found negligent for his failure to rescue Gonzalez from the situation. However, this is an *intentional* act, not an "accident" that results in " 'additional, unexpected, independent and unforeseen happening.' " (*Quan*, *supra*, 67 Cal.App.4th at p. 599.) "When one expects or intends an injury to occur, there is no 'accident.' " (*Interinsurance Exchange v. Flores* (1996) 45 Cal.App.4th 661, 669.) An alleged failure to rescue Gonzalez from the situation can only be characterized as a deliberate, intentional act.

Gonzalez also points to her third cause of action for false imprisonment, arguing that her complaint alleged the possibility that Rebagliati accidentally caused her to be

---

[4] The complaint alleged: "Plaintiff is informed and believes and thereon alleges that Defendants STEPHEN REBAGLIATI [and nine other defendants] were the men inside the room."

14

confined to a room. Gonzalez argues that her complaint raised the possibility that "Rebagliati faced potential liability for accidentally blocking [her] egress from the room, or accidentally placing himself so as to prevent departure or rescue." This assertion is based on the broad wording of her allegation of false imprisonment, which asserted that Rebagliati and the other defendants to her lawsuit "caused [Gonzalez] to be confined in a room on the property."

The *Lyons* court illustrated two situations where negligent false imprisonment may constitute an accident. In the first example, a shopkeeper closes a storage vault forgetting he had asked an employee to go inside to take inventory. (*Lyons*, *supra*, 161 Cal.App.4th at p. 888.) In the second example, a store owner detains an individual he mistakenly believes was shoplifting. (*Ibid*.) In these scenarios, the "conduct is intentional and results in the restraint and control of the movements of the other person" but can still be characterized as "accidental." (*Ibid*.) These intentional acts are accidental because they "potentially arise[] from extrinsic causes, such as the employee's unexpected or chance distraction, or the carelessness of the shopkeeper. So, too, the wrongful detention of a suspected shoplifter without reasonable cause typically arises from an employee's careless assessment of objective facts. The above scenarios all involve mistakes as to objective facts." (*Id*. at p. 889.)

Importantly, "coverage turns not on 'the technical legal cause of action pleaded by the third party' but on the '*facts* alleged in the underlying complaint' or otherwise known to the insurer. (*Barnett v. Fireman's Fund Ins. Co.* [(2001)] 90 Cal.App.4th [500,] 510, italics added.) A general boilerplate pleading of 'negligence' adds nothing to a complaint otherwise devoid of *facts* giving rise to a potential for covered liability. (See *Michaelian v. State Comp. Ins. Fund* (1996) 50 Cal.App.4th 1093, 1107.)" (*Swain v. California Casualty Ins. Co.* (2002) 99 Cal.App.4th 1, 8.) Therefore, to determine whether

15

Gonzalez's complaint sufficiently alleged accidental conduct that would give rise to coverage, we must look at what acts were alleged in her complaint.

Gonzalez's complaint simply does not allege a possibility that Rebagliati "accidentally" falsely imprisoned her based on a mistake as to the objective facts. Gonzalez's argument that her complaint alleged the possibility that Rebagliati only committed accidental acts--such as mistakenly blocking her exit--is *not* asserted in her underlying complaint, which plainly alleged Rebagliati and the other men in the room engaged in *intentional* acts. Gonzalez's attempt to parse out the complaint for accidental conduct that may give rise to coverage is unavailing; the entirety of her allegations involved intentional conduct.

Gonzalez appears to assert that her complaint could be hypothetically construed to state a claim regarding accidental conduct. However, this argument is not based on any facts alleged in her complaint, and "[a]n insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date." (*Gunderson v. Fire Ins. Exchange* (1995) 37 Cal.App.4th 1106, 1114.)

Moreover, the other causes of action Gonzalez insists can be interpreted as based on accidental conduct, such as her causes of action for invasion of privacy and slander per se, also involve intentional conduct. Gonzalez's complaint alleged the men in the room jeered, cheered, and took pictures of the assault. She also alleged they slandered her in the days and months following the incident. Any utterance by Rebagliati, or any action taken in furtherance of invading Gonzalez's privacy, would have been an intentional act and not an accidental occurrence that would be potentially covered by the Fire policy.

In sum, Gonzalez has failed to carry her burden to show any of her causes of action *may* fall within the scope of the policy coverage. (*Montrose Chemical Corp. v.*

16

*Superior Court*, *supra*, 6 Cal.4th at p. 300.) Accordingly, the trial court did not err in granting Fire's motion for summary judgment. Based on our foregoing conclusion, we need not address whether the alleged causes of action would have fallen within the Fire policy's exclusions for child molestation and intentional conduct.

       3. *The Truck Umbrella Policy*

          a. **Personal Injury Coverage**

Next, Gonzalez insists the court erred in granting summary judgment in favor of Truck because its umbrella policy provided broader coverage than the Fire homeowner's insurance policy. Specifically, she argues the umbrella policy's definition of "personal injury" did not require covered incidents to be "accidental" in nature. Given the wording of the policy's definitions, we agree.

The Truck policy provided coverage for "damages caused by an occurrence in excess of the retained limit on the insured's behalf," and stated the company would "defend any insured for any claim or suit that is covered by this insurance but not covered by other insurance." The policy further asserted that "[i]f a claim or suit is made for damages excluded from coverage under this policy, we have no obligation to defend such claim or suit."

Gonzalez points to the policy's definition of an "occurrence": "Occurrence means: [¶] a. with regard to *bodily injury or property damage*, *an accident*, including continuous or repeated exposure to substantially the same general harmful conditions, which results in bodily injury or property damage during the policy period; or [¶] b. with regard to *personal injury*, offenses committed during the policy period, even if the resulting injury takes place after the policy expires." (Italics added.) "Personal Injury" is defined under the policy as "injury arising out of: [¶] a. false arrest, wrongful detention or imprisonment, or malicious prosecution; [¶] b. wrongful eviction, wrongful entry, or

17

invasion of the right of private occupancy; or [¶] c. libel, slander, defamation of character or invasion of privacy."

Accordingly, the Truck umbrella policy sets forth no requirement that a personal injury arise out of an "accident" in order for there to be coverage. As a result, Gonzalez's complaint, which alleged causes of action for false imprisonment, slander per se, and invasion of privacy, raised the potential for coverage under the umbrella policy's provision providing coverage for damages from an "occurrence" resulting in "personal injury."

b. **Exclusions**

Finding that Gonzalez's complaint raised the potential for personal injury coverage, we next turn to Truck's claim that coverage would have been properly denied under the policy's exclusions for damages that are "[e]ither expected or intended from the standpoint of an insured," arise "out of corporal punishment, molestation or abuse of any person by any" insured, or arise "out of oral or written publication of material when a willful violation of a penal statute or ordinance has been committed by or with the consent of the insured."

Determining whether an exclusion applies is unlike our earlier analysis of the Fire policy, which centered on the initial question of *coverage*. Here we are faced with an issue of *exclusion*. While an insured bears the initial burden to demonstrate a claim may be covered by a policy, when it comes to exclusions the burden is switched. It is up to the *insurer* to conclusively show an exclusion to the policy applies barring coverage. (*Atlantic Mutual Ins*. *Co*. *v*. *J*. *Lamb*, *Inc*. (2002) 100 Cal.App.4th 1017, 1034 ["[o]nce that possibility of coverage has been raised . . . then the insurer may defeat such claim of coverage by extrinsic evidence, but only where ' "such evidence presents *undisputed* facts which *conclusively* eliminate a potential for liability." ' "]) "First-and third party coverage is today typically provided in a single policy, and under both types of coverage,

18

once the insured shows that an event falls within the scope of basic coverage under the policy, the burden is on the insurer to prove a claim is specifically excluded. [Citations.] Moreover, exclusionary clauses are interpreted narrowly, whereas clauses identifying coverage are interpreted broadly." (*Garvey v. State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395, 406.)

Therefore, our analysis is focused on whether Truck met its burden to establish all of Gonzalez's claims were excluded from coverage. (See *Brodkin v. State Farm Fire & Casualty Co.*, *supra*, 217 Cal.App.3d at p. 216.) With this framework in mind, we address each of the exclusions raised by Truck on appeal.

*Sexual Molestation Exclusion*

From the face of the complaint, it is clear that some of Gonzalez's claims would be excluded from coverage as arising from sexual molestation by the insured. For example, Gonzalez's causes of action for battery and unlawful intercourse, which alleged the defendants engaged in sexual intercourse with her without her consent, would be excluded. Rebagliati's liability for damages would necessarily have arisen from *his* acts of molestation.

However, whether the sexual molestation exclusion bars coverage of Gonzalez's other claims is not quite as clear. The Truck policy excludes coverage for damages resulting from any acts of "molestation" *by the insured* (Rebagliati), an employee of any insured, or by a person performing volunteer services on behalf of an insured, or any other person who is acting or who appears to be acting on behalf of an insured. Gonzalez's complaint was pleaded using the disjunctive "and/or," specifically alleging that Rebagliati "and/or each" of the defendants caused her injury. Therefore, her complaint raised the possibility that *the other defendants*--and perhaps not Rebagliati-- committed the physical act of assaulting Gonzalez.

19

In fact, her complaint suggests the possibility that Rebagliati may not have engaged in the sexual assault, but was present in the room while the assault took place and may have thereafter disparaged Gonzalez's reputation by slandering her after the incident. The complaint indicates Rebagliati may be held liable for damages resulting from his alleged slander, false imprisonment, or invasion of Gonzalez's privacy arising from molestation undertaken by the other named defendants in the civil lawsuit. Therefore, the sexual molestation exclusion does not necessarily apply, because it only excludes coverage for damages arising from an act of molestation by the insured, an individual acting on behalf of the insured, an individual performing volunteer services on behalf of an insured, or an employee of an insured. There is no evidence the other defendants acted on behalf of Rebagliati such that *their* molestation of Gonzalez would fall under this exclusion.

In the trial court the insurers asserted that there was no possibility that any damages could arise out of a covered occurrence because Rebagliati later admitted to touching Gonzalez at the party. However, there is nothing to indicate this fact was known to the insurance company at the time Rebagliati tendered his defense. In a declaration submitted by Gonzalez to the trial court, Rebagliati's attorney asserted his client denied responsibility and denied all of Gonzalez's allegations. Therefore, that Rebagliati eventually admitted to touching Gonzalez at some point after he tendered his defense to Fire and Truck is irrelevant to our analysis. Extrinsic facts negating an insurer's duty to defend must have been known to the insurer at the time of tender or at the inception of the lawsuit. (*Montrose Chemical Corp. v. Superior Court*, *supra*, 6 Cal.4th at p. 295.)

Notably, the insurance companies' declarations in support of their motion for summary judgment assert an investigation was conducted into Rebagliati's claim before he was denied coverage. However, the companies failed to attach any documents

20

detailing the results of this investigation, and the letter denying Rebagliati coverage relied solely on comparing the allegations of the complaint against the language of the policies. Perhaps there was extrinsic evidence known to Truck that affirmatively showed Rebagliati engaged in the sexual assault, thereby excluding coverage for all of Gonzalez's claims and foreclosing any duty to defend. Nonetheless, no evidence of this type was submitted to the trial court. Therefore, Truck has failed to meet its burden to conclusively show the policy's exclusion for damages incurred from molestation by the insured would have precluded coverage for all claims.

*Expected or Intended Damages*

Next, we examine whether the policy's exclusion for damages that are "[e]ither expected or intended from the standpoint of the insured" obviate Truck's duty to defend. Indeed, Insurance Code section 533 provides a statutory exclusion that "[a]n insurer is not liable for a loss caused by the willful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others." Courts have held that "[t]he appropriate test for 'expected' damage is whether the insured knew or believed its conduct was substantially certain or highly likely to result in that kind of damage." (*Shell Oil Co. v. Winterthur Swiss Ins. Co.* (1993) 12 Cal.App.4th 715, 748.) " '[E]ven an act which is "intentional" or "willful" within the meaning of traditional tort principles will not exonerate the insurer from liability under Insurance Code section 533 unless it is done with a *preconceived design to inflict injury*." ' " (*Republic Indemnity Co. v. Superior Court* (1990) 224 Cal.App.3d 492, 500-501.) Therefore, it is the insured's subjective belief as to whether his or her conduct would cause the type of damage claimed that excludes coverage.

Since Rebagliati denied any wrongdoing at the time of tender and because Truck has not submitted any evidence to the contrary, we cannot find that the insurer has met its burden on this exclusion. Based on the complaint, Rebagliati could have been found

21

liable for damages incurred by Gonzalez due to his negligence in creating the conditions that led to her false imprisonment in the room. A tort such as false imprisonment may result from intentional conduct and is therefore nonaccidental, but a subjective intent or expectation that harm would occur on the part of the insured is not required for liability. (See *Lyons*, *supra*, 161 Cal.App.4th at pp. 888-889.) The same can be said of Gonzalez's cause of action for slander per se, which does not require proof that an individual intended to cause harm.[5]

Furthermore, distinguishing a tort as "intentional" and determining whether any damages are "intended or expected" by the insured requires a fundamentally different analysis. One may commit an intentional act without subjectively intending or expecting damages. Here, Truck has failed to meet its burden to conclusively show that Rebagliati would have expected or intended any damages to flow from his alleged conduct based solely on the allegations of the complaint.

*Criminal Acts*

Lastly, we turn to whether the acts alleged would fall under Truck's exclusion for "personal injury arising out of oral or written publication of material when a willful violation of a penal statute or ordinance has been committed by or with the consent of the insured."

---

[5] "Slander is a form of defamation (Civ. Code, § 44), consisting of a false and unprivileged oral publication (Civ. Code, § 46). To establish a prima facie case for slander, a plaintiff must demonstrate an oral publication to third persons of specified false matter that has a natural tendency to injure or that causes special damage. (See *Smith v. Maldonado* [(1999)] 72 Cal.App.4th [637,] 645.) Certain statements are deemed to constitute slander per se, including statements (1) charging the commission of crime, or (2) tending directly to injure a plaintiff in respect to the plaintiff's business by imputing something with reference to the plaintiff's business that has a natural tendency to lessen its profits. (Civ. Code, § 46, par. 1; *Albertini v. Schaefer* (1979) 97 Cal.App.3d 822, 829.) Slander per se is actionable without proof of special damage. (*Albertini*, at p. 829.)" (*Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 106-107.)

22

Again, Truck has failed to meet its burden to conclusively show this exclusion would bar coverage for Gonzalez's complaint. There was no extrinsic evidence at the time of tender that conclusively demonstrated Rebagliati assaulted Gonzalez and therefore violated the law. Nor was there an admission on Rebagliati's behalf that he committed a crime. Furthermore, the complaint raised the possibility that the other individuals named in the complaint were the ones who perpetrated the sexual assault against Gonzalez. There was no evidence that Rebagliati somehow consented to these acts or ratified these acts in any way. As a result, Truck has failed to conclusively demonstrate this exclusion would eliminate coverage for all of Gonzalez's claims.

Truck's arguments on appeal suffer from a pervasive flaw: a reliance on the allegations in the complaint in ascertaining an exclusion to the policy applies. While this analysis may be applicable to determine whether *coverage* applies, it is the burden of the insurer to demonstrate an *exclusion* eliminates all potential for coverage.

### c. Inseparably Intertwined with Sexual Acts

Fire and Truck also broadly claim that the allegations in Gonzalez's complaint, including her causes of action for negligence and slander, were inseparably intertwined with the underlying sexual assault and should therefore be excluded from coverage on that basis.

In part, the insurers cite to *Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076 (*Horace Mann*). *Horace Mann* contemplated whether an insurance carrier was required to defend its insured, a teacher, under an educator's liability policy after a minor student filed an action seeking damages stemming from the teacher's alleged sexual and other nonsexual misconduct. (*Id*. at p. 1078.) Earlier, the teacher had pleaded nolo contendere in a separate criminal case to a count of violating Penal Code section 288, subdivision (a). (*Horace Mann*, *supra*, at p. 1079.) The insurance company accepted tender of the teacher's defense of the minor's suit, reserving its rights to disclaim

23

coverage or an obligation to defend. Thereafter, the insurance company filed a declaratory relief action seeking a determination of its duty to defend. (*Id*. at p. 1080.) The insurance company moved for summary judgment, arguing its policy did not provide coverage as a matter of law, because the teacher's conduct was intentional within the meaning of Insurance Code section 533 and was unrelated to educational activities. (*Horace Mann*, *supra*, at p. 1080.) The trial court granted the motion, concluding that all of the teacher's acts were either sexual or intentional, and entered judgment in favor of the insurance company. The appellate court affirmed, and our Supreme Court reversed. (*Id*. at p. 1081.)

The *Horace Mann* court noted that it had previously decided that a liability insurer does not possess "a duty to indemnify an insured in an action for damages arising out of child molestation" in *J.C. Penney Casualty Ins. Co. v. M.K.* (1991) 52 Cal.3d 1009. (*Horace Mann*, *supra*, 4 Cal.4th at p. 1081.) However, the court determined "the flaw in [the insurance company's] reasoning is its unsupported assumption that the other alleged misconduct necessarily was part of the molestation and not in the course of [the teacher's] educational activities." (*Id*. at p. 1082.) At the time of the summary adjudication proceeding, the teacher had admitted violating Penal Code section 288, thereby establishing at least one act of sexual misconduct that would be excluded from policy coverage. (*Horace Mann*, *supra*, at p. 1083.) However, the record was "devoid of evidence which establishes the chronology or sequence of events comprising the alleged misconduct or that these actions were integral to the molestation. For instance, the record is devoid of evidence demonstrating that [the teacher's] acts of [other misconduct] occurred in such close temporal and spatial proximity to the molestation as to *compel* the conclusion that they are inseparable from it for purposes of determining whether [the insurance company] [had] a duty to defend [the teacher]." (*Id*. at pp. 1083-1084.)

The *Horace Mann* court underscored that this was so even if the admitted molestation was the " 'dominant factor' " in the case. (*Horace Mann*, *supra*, 4 Cal.4th at p. 1084.) Nonetheless, the court also reiterated that there may be cases where a plaintiff's allegations of molestation are "inseparably intertwined," eliminating the duty to defend. (*Id*. at p. 1085.)

Many appellate courts have distinguished the unique factual circumstances presented in *Horace Mann* and have determined insurers have no duty to defend certain claims involving sexual assault or molestation. For example, in *Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co.* (1993) 14 Cal.App.4th 1595 (*Coit*), the appellate court concluded that a defendant in a sexual harassment case was properly denied insurance coverage because the alleged incidents were intentional in nature and barred under Insurance Code section 533. (*Coit*, *supra*, at p. 1599.) *Coit* concluded that unlike the allegations of negligence in *Horace Mann*, the case at bench presented a clear picture that "the conduct of the defendants was inseparably intentional" and was "part of a consistent course of sexual harassment of an unconsenting victim, in an employment setting." (*Id*. at p. 1608.) Furthermore, the harassed employee did not allege a claim for negligent supervision, and no claim of negligence could have been supported based on the facts. (*Id*. at p. 1609.)

Fire and Truck also argue that a case from this court, *State Farm Fire & Casualty Co. v. Century Indemnity Co.* (1997) 59 Cal.App.4th 648, 662 (*State Farm Fire*), stands for the proposition that there is no duty to defend when sexual and nonsexual claims overlap. In *State Farm Fire*, three former students sued four teachers and a school district, alleging that one of the teachers sexually molested them, and the other defendant teachers failed to report the offending teacher to the proper authorities. (*Id*. at p. 652.) The teacher accused of molestation tendered his defense to the district's insurer, and the insurer declined to defend. Thereafter, the teacher tendered his defense to State Farm

Fire, which accepted the defense under the teacher's homeowner's policy. (*Ibid*.) State Farm Fire thereafter filed suit against the district's insurer to recover the cost of defending the teacher. The trial court granted summary judgment in favor of State Farm Fire, and this court reversed. (*Ibid*.)

State Farm Fire contended on appeal that *Horace Mann* controlled, because the underlying complaint alleged both sexual misconduct *and* nonsexual conduct arising from the accused teacher's failure to report the allegations lodged against himself by the victim students. (*State Farm Fire*, *supra*, 59 Cal.App.4th p. 661.) However, this court disagreed, finding the accused teacher's negligent failure to report was "directly and necessarily linked to the molestation because it is information about that molestation that [the teacher] failed to report." (*Id*. at p. 662.) Furthermore, we concluded that "realistically, a subsequent failure to report one's own unlawful sexual contact with a minor is not distinct and separable conduct; rather, it is an integral part of the shroud of secrecy that typically hides molestation and is essential to its perpetration." (*Ibid*.) We determined that "the gravamen of alleged negligent failure to report and the alleged molestation is essentially the same: an injury to the minor's interest in protecting and preserving his or her physical integrity from sexual misconduct by [the teacher]." (*Id*. at p. 663.)

Similarly, in *Jane D. v. Ordinary Mutual* (1995) 32 Cal.App.4th 643 (*Jane D.*), the Third Appellate District considered a case where a plaintiff brought suit against a priest, alleging the priest had induced her into having sexual relations after she sought counseling from him when she was only 15 years old. (*Id*. at p. 645.) The priest did not oppose the plaintiff's lawsuit and the plaintiff obtained a default judgment against him. Thereafter, the plaintiff brought an action against the defendant insurance company, seeking a declaration that the priest was covered by the policy and the company was

26

therefore obligated to pay the full policy limit in satisfaction of the default judgment against the priest.  (*Id*. at p. 646.)

The policy at issue provided insurance coverage for bodily injury and property damage, and " 'persons insured' " was defined as employees acting within the scope of their employment.  (*Jane D*., *supra*, 32 Cal.App.4th at p. 646.)  The "named insured" was the diocese.  The policy provided exclusions for " 'licentious, immoral or sexual behavior intended to lead to or culminating in any sexual act.' " (*Id*. at p. 647.)  The policy also provided a sexual misconduct endorsement, which provided the insurance company would pay a maximum of $1 million on behalf of the named insureds for damages due to " 'any claim made against such Named Insureds arising out of sexual misconduct, sexual abuse, sexual harassment or sexual molestation of or by any person,' subject to certain conditions.  It also provided:  'No other endorsement to the policy is intended to provide coverage for any claims concerning sexual misconduct, sexual abuse, sexual harassment, or sexual molestation of or by any person.' " (*Ibid*.)  On a motion for summary judgment, the trial court determined the accused priest was not a "named insured" under the policy and entered judgment in favor of the defendant insurance company.  (*Id*. at p. 648.)

*Jane D*. cited to and distinguished the *Horace Mann* decision.  The plaintiff in *Jane D*. had argued that there were allegations in her complaint that were based on nonsexual conduct.  However, the court determined that unlike the factual scenario described in *Horace Mann*, the "allegations of nonsexual conduct--obtaining information about plaintiff during counseling and using this information and misusing counseling techniques to create transference and to control and induce plaintiff's behavior--were 'inseparably intertwined' with the sexual misconduct." (*Jane D*., *supra*, 32 Cal.App.4th at p. 653.)  Therefore, the appellate court affirmed the trial court's judgment in favor of the insurance company.

We disagree with the insurers that these cases set forth a blanket rule that if a cause of action is related to sexual molestation it must be excluded from insurance coverage. This interpretation would gloss over the finer nuances of the law governing an insurer's duty to defend. For example, *Horace Mann* reiterated that "[i]f the parties to a declaratory relief action dispute whether the insured's alleged misconduct should be viewed as essentially a part of a proven sexual molestation, or instead as independent of it and so potentially within the policy coverage, . . . then factual issues exist precluding summary judgment in the insurer's favor. Indeed, the duty to defend is then *established*." (*Horace Mann*, *supra*, 4 Cal.4th at p. 1085.)

Unlike the scenarios contemplated in *Jane D.* and *Coit*, Gonzalez's complaint did not necessarily set forth allegations that were inseparably intertwined with *Rebagliati*'s purported sexual assault. The aforementioned cases involved only one defendant, with causes of actions based upon the one defendant's alleged acts. Here, Gonzalez's complaint raised the possibility that *other individuals*--and not Rebagliati--perpetrated the assault. Perhaps if it was known to Truck that Rebagliati had admitted to the molestation, any cause of action for slander based on the assault might have "arisen" out of his molestation of Gonzalez and would therefore be properly excluded from coverage. However, we have no such admission before us here; therefore, we decline to address whether all of Gonzalez's claims would necessarily be inseparably intertwined with the underlying sexual molestation and would therefore be subject to exclusion on that ground.

Furthermore, in *Horace Mann*, *Coit*, and *Jane D.*, the underlying molestation allegations were either admitted by the accused or otherwise proven by extrinsic evidence. Here the insurers have not demonstrated they had conclusive proof that molestation by their insured, Rebagliati, occurred prior to refusing the defense. Nor did defendant admit he committed any of the alleged acts prior to tendering his defense.

The insurers argue that Rebagliati's denial of wrongdoing is irrelevant to determine coverage. We agree, as it is the facts alleged in the complaint, and any extrinsic evidence known to the insurer, that determines whether coverage applies. However, when the insured meets his or her relatively low burden to demonstrate that a possibility for coverage exists on a motion for summary judgment, it is up to the insurer to conclusively demonstrate an exclusion applies. Truck simply fails to meet its burden.[6]

Therefore, the trial court erred in granting summary judgment in favor of Truck.

### DISPOSITION

The judgment is reversed. On remand, the trial court is directed to enter an order denying the motion for summary judgment as to Truck Insurance Exchange and granting the motion for summary judgment as to Fire Insurance Exchange. All parties shall bear their own costs on appeal.

Premo, J.

WE CONCUR:

Rushing, P.J.

Elia, J.

---

[6] We reiterate that here we are concerned with the insurers' duty to defend its insured from a claim that seeks damages that can be *potentially* covered under the policy. This is broader in scope than the duty to indemnify. (*Quan*, *supra*, 67 Cal.App.4th at pp. 590-591.)

29

Filed 3/4/15

# CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JESSICA GONZALEZ, | H039368 |
| | (Santa Clara County |
| Plaintiff and Appellant, | Super. Ct. No. 1-11-CV215537) |
| v. | |
| FIRE INSURANCE EXCHANGE et al., | |
| Defendants and Respondents. | |

BY THE COURT:

The opinion which was filed on February 5, 2015, is certified for publication.

_____

Premo, Acting P.J.,

_____

Elia, J.

The written opinion which was filed on February 5, 2015, has now been certified for publication pursuant to rule 8.1105(b) of the California Rules of Court, and it is therefore ordered that the opinion be published in the official reports.


Dated: _____                    _____

                                                              Premo, Acting P.J.

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. 1-11-CV215537 |
| Trial Judge: | Hon. Mark H. Pierce |
| Counsel for Plaintiff/Appellant:<br>Jessica Gonzalez | Adleson, Hess & Kelly<br>Randy M. Hess<br>Pamela A. Bower |
| Counsel for Defendant/Respondent:<br>Fire Insurance Exchange<br>Truck Insurance Exchange | Becherer Kannett & Schweitzer<br>Lori A. Schweitzer<br>Dolores Bastian Dalton<br>Susan Beneville |