[No. G006664. Fourth Dist., Div. Three. Oct. 31, 1989.]

ALLSTATE INSURANCE COMPANY, Plaintiff and Respondent, v. INTERBANK FINANCIAL SERVICES et al., Defendants and Appellants.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rule 976(b)(1), this opinion is certified for publication with the exception of part I.

**COUNSEL**

Rucker & Clarkson, Robert L. Clarkson, Juel Rubin-Hart, Brown, Arvanitis & McDonnell, John L. Romaker, Brown & DiRe and William J. Becker, Jr., for Defendants and Appellants.

Peterson, Ross, Schloerb & Seidel and Mark D. Peterson for Plaintiff and Respondent.

**OPINION**

**SCOVILLE, P. J.**—The primary issue presented by this appeal is whether an insurance company has a duty to defend or indemnify an insured under a business liability policy in an action between the insured and its client for securities fraud. We hold the insurance company has no such duty and affirm the judgment.

BACKGROUND

*The Third Party Complaints*

In November 1986 plaintiff Allstate Insurance Company issued a business liability insurance policy[1] to defendant Interbank Financial Services.[2] On the insurance application form, Interbank listed the nature of its business as "Life Insurance Sales & Service." Policy limits were $1 million, and the annual premium was $317.

In January 1987 Interbank and defendant John Naslund, an officer and director of Interbank, tendered the defense of 10 state court actions to Allstate.[3] The complaints alleged that Interbank "acted as a broker-dealer, investment advisor and insurance advisor" with respect to "the offering for sale and selling . . . of securities in the form of 'tax shelter' and 'conservative income producing' investments involving thoroughbred racehorses," and that beginning in 1980 Interbank conspired with numerous other defendants to "represent to the public that they were providing safe, secure, and conservative tax shelter investments . . . in the form of programs and projects involving the purchase, ownership, management, boarding, training, leasing, breeding, and sale of thoroughbred racehorses." The

---

[1] The Allstate "Customizer" policy which is the subject of this action is divided into business property and business liability coverage. Since no claim is made under the business property coverage, we refer to the policy as being for business liability for convenience only.

[2] We note the insurance policy was taken out in the name of Interbank Financial Services, Inc., whereas the state and federal lawsuits list the defendant as Interbank Insurance Services, Inc. Allstate has assumed that the two entities are the same and the discrepancy is not an issue on this appeal.

[3] See Schroeder v. North American Thoroughbreds, OCSC No. 506784; Kifer v. North American Thoroughbreds, OCSC No. 509783; Pelton v. North American Thoroughbreds, OCSC No. 510453; Davidson v. North American Thoroughbreds, OCSC No. 510454; Sathrum v. North American Thoroughbreds, OCSC No. 511406; Dietz v. North American Thoroughbreds, OCSC No. 511407; Gardner v. North American Thoroughbreds, OCSC No. 511412; Fink v. North American Thoroughbreds, OCSC No. 511413; Vosburgh v. North American Thoroughbreds, OCSC No. 511414; Rumsey v. North American Thoroughbreds, OCSC No. 511485. We note Interbank and Naslund are but two in a lengthy list of defendants.

complaints alleged the representations were false, that the federal government had "challenged the tax treatment," and other investors had not "passed court review and/or audits of their tax deductions" under the program. The complaints sought damages for state and federal securities fraud as well as other claims.

In July 1987 Interbank, Naslund, and Scott Wolters, an alleged director in American Thoroughbreds International, tendered the defense of a federal action to Allstate which was based on the same alleged violations.[4]

Allstate accepted the tenders under a reservation of rights, and filed this action for declaratory relief seeking a declaration that it had no duty to defend or indemnify these defendants under the terms of the policy.

*The Insurance Policy*

The policy which is the subject of this declaratory relief action provides as follows:

"Coverage B—Business Liability

". . . . . . . . . . . . . . . . . . .

"We will pay on behalf of persons insured all sums which they become legally obligated to pay as damages arising out of an accidental event, personal injury or advertising injury that occurs while this policy is in effect."

Under "Definitions," the policy defines these key terms as follows: " 'Accidental event' means an accident, including continuous or repeated exposure to the same conditions, resulting in bodily injury or property damage. An accident cannot be intended or expected by any persons insured, except for the use of reasonable force to protect persons or property.

" 'Advertising injury' means injury which arises out of an offense committed in the conduct of your advertising activities if such injury arises out of libel, slander, defamation, violation of the right of privacy, piracy, unfair competition or infringement of copyright, title or slogan.

" 'Bodily injury' means injury, sickness or disease and includes death that results from injury, sickness or disease.

---

[4] See *Antonopulos* v. *North American Thoroughbreds, Inc.*, USDC No. 87-0979 G (CM).

"  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

" 'Personal injury' means the following offenses committed in the course of your business: [¶] 1. The false arrest, detention or imprisonment of anyone. [¶] 2. Malicious prosecution. [¶] 3. Libel, slander or the publication of any material damaging to anyone's reputation. [¶] 4. Any writing or statement that violates anyone's right of privacy. [¶] 5. Any wrongful entry on anyone's premises, wrongful eviction from those premises or other action that violates anyone's private occupancy. [¶] Personal injury does not include offenses committed in the course of your advertising, broadcasting, publishing or telecasting activities. . . .

"  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

" 'Property damage' means physical damage to, or the destruction of, any tangible property, including any losses that result because the damaged or destroyed property can no longer be used."

Finally, the policy provides under "Exclusions—Liabilities We Do Not Cover" as follows: "We do not cover:

"  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"21. Any accidental event, personal injury or advertising injury, arising out of the rendering of or the failure to render scientific or professional services, or consulting business or technical services. . . ."

*The Summary Judgment Motion*

Allstate moved for summary judgment under Code of Civil Procedure section 437c. Finding that the insurer had issued a business liability policy and that it had no duty under the policy to defend or indemnify the insureds in an action based on securities fraud, the trial court granted summary judgment in favor of Allstate. Interbank, Naslund, and Wolters (the insureds) appeal.

DISCUSSION

I*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

---

* See footnote, *ante*, page 825.

## II

■ At issue here is whether an insurer under a standard business liability policy must defend an insured in an action charging the insured with securities fraud. We hold that it need not.

■ We are guided in our analysis by the basic principle that an insurer has a duty to defend an insured if it becomes aware of, or if the third party complaint pleads, facts which give rise to potential liability under the policy. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 275-277 [54 Cal.Rptr. 104, 419 P.2d 168].) ■ "Where the underlying facts are not disputed, construction of an insurance policy presents a question of law. The appellate court is not bound by the trial court's interpretation . . . [and] must independently interpret the language of the insurance contract. [Citation.]" (*Merced Mutual Ins. Co.* v. *Mendez* (1989) 213 Cal.App.3d 41, 45 [261 Cal.Rptr. 273].) ■ However, "the burden is on the insured initially to prove an event is a claim within the scope of the basic coverage. [Citation.]" (*Id.* at p. 47; see also *Royal Globe Ins. Co.* v. *Whitaker* (1986) 181 Cal.App.3d 532, 537 [226 Cal.Rptr. 435].)[5]

■ The insureds attempt to meet their burden by arguing that the losses on the tax shelter schemes were unexpected and therefore they were an "accidental event." They then assert that the complaints give rise to potential liability under the policy because they allege the insureds "failed to properly manage and care for the plaintiffs' personal property," and "the plaintiffs' property has been negligently and carelessly damaged." These claims, according to the insureds, fall within the provisions defining bodily injury and property damage.

Based on our independent review of the subject policy and the complaints, we cannot find coverage. The policy covers losses resulting from accidental events which cause bodily injury or property damage, not the giving of professional or investment advice. ■ As one court held, "strictly economic losses like lost profits, loss of goodwill, loss of the antici-pated benefit of a bargain, *and loss of an investment,* do not constitute damage or injury to tangible property covered by a comprehensive general liability policy." (*Giddings* v. *Industrial Indemnity Co.* (1980) 112 Cal.App.3d 213, 219 [169 Cal.Rptr. 278], italics added; see also *Fresno Economy Import Used Cars, Inc.* v. *United States Fid. & Guar. Co.* (1977) 76 Cal.App.3d 272, 279 [142 Cal.Rptr. 681].) ■ Here, although the

---

[5]This must be contrasted with the rule that the burden is on the insurer to prove a claim falls within an exclusion to the policy. (*Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 880 [151 Cal.Rptr. 285, 587 P.2d 1098].)

insureds attempt to characterize the claims differently, the clear bases of the complaints are that the insureds gave poor professional advice and the plaintiffs lost money in a tax shelter investment.

Had these insureds desired to obtain a professional liability policy to protect them from charges resulting from the performance of professional services, such insurance could have been obtained. The premium would likely have been higher than the $317 annual premium charged here for general business liability insurance. But the insurer who issues a policy for errors and omissions insures against a far different risk than that insured against here. More important, just as an insurer would not reasonably expect that a business liability policy would cover claims for securities fraud, these insureds could not reasonably expect that such claims would be covered under this policy.

The judgment is affirmed.

Crosby, J., and Wallin, J., concurred.

Appellants' petition for review by the Supreme Court was denied January 24, 1990.