Charles H. KEATING, Jr.; Andrew Ligget; Charles A. Keating, III; Robert Wurzelbacher; Robert J. Hubbard; Robert J. Kielty; James Grogan; Judy J. Wischer, Plaintiffs–Appellees,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Defendant–Appellant.

No. 90–56265.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 6, 1991.

Submission Deferred Dec. 23, 1991.

Resubmitted May 25, 1993.

Decided June 3, 1993.

Marcus A. Kaufman and Cheryl A. Orr, Buchalter, Nemer, Fields & Younger, Los Angeles, CA, for defendant-appellant.

Dennis A. Winston, Rosen & Winston, Michael Kerry Burke, Michael D. Howald, Kinsella, Boesch, Fujikawa & Towele, Los Angeles, CA, William M. Goodman, Topel & Goodman, San Francisco, CA, for plaintiffs-appellees.

David A. Beck, Resolution Trust Corp. Phoenix, AZ, for amicus.

Before PREGERSON, CANBY and RYMER, Circuit Judges.

CANBY, Circuit Judge:

The district court granted partial summary judgment to Charles Keating, Andrew Ligget and their fellow plaintiffs (collectively "Keating") on their declaratory judgment claim that two comprehensive general liability insurance policies obligated National Union to defend Keating in several investor lawsuits. 754 F.Supp. 1431. We reverse.

*Unfair Competition*

The comprehensive general liability policies in issue provided coverage to Keating for, among other things, all sums that Keating became legally obligated to pay as "damages" because of "advertising injury." "Advertising injury" was defined as injury arising out of certain named torts, including "unfair competition." It was Keating's position in bringing this action for declaratory relief that the securities fraud and related claims brought by the various investor plaintiffs in the underlying litigation were claims for "unfair competition" within the meaning of National Union's policies. National Union defended on the ground that "unfair competition" was to be narrowly defined as the common-law tort of unfair competition, which gives a cause of action only for competitive injury. Keating, on the other hand, argued that the term was intended to include the broader list of unlawful trade practices defined as unfair competition in California's Unfair Business Practices Act, Cal.Bus. & Prof.Code § 17200 (West 1987 & Supp.1993) *et seq.* The district court found both arguments plausible, and concluded that the policy term was ambiguous; it therefore construed the clause against the insurer, National Union. National Union appealed.

We deferred submission of this case pending the California Supreme Court's decision in *Bank of the West v. Superior Court,* 2 Cal. 4th 1254, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992). When that decision was rendered, we ordered supplemental briefing, which has occurred. Despite Keating's arguments, we are convinced that *Bank of the West* totally undermines the district court's ruling on this issue. *Bank of the West* held that, when a policy provides coverage (as do National Union's policies here) for "damages" caused by "unfair competition," the latter phrase does *not* include claims that might be brought under the Unfair Business Practices Act, which provides only for restitution, not damages. *Bank of the West,* 10 Cal.Rptr.2d at 543–51, 833 P.2d at 550–58. Moreover, the context of the term "unfair competition" in the policy, in light of the reasonable expectations of the insured, makes the term's meaning so clear that the broader definition in the Unfair Business Practices Act does not even create ambiguity. *Id.,* 10 Cal.Rptr.2d at 550, 833 P.2d at 557.

Keating points out that the California Supreme Court in *Bank of the West* did not explicitly confine coverage under the policy term to the tort of common-law unfair competition. This point is of little aid to Keating, however. The *Bank of the West* opinion rejected expansive dictionary definitions of "unfair competition" that generally encompassed harms to the public in addition to harms to competitors. *Id.,* 10 Cal.Rptr.2d at 545, 833 P.2d at 552. The California Court recited that the overwhelming majority of courts have held that the term "unfair competition" as it appears in National Union's policies limits coverage to liability arising from the common-law tort of unfair competition. *Id.,* 10 Cal.Rptr.2d at 544, 833 P.2d at 551. Whether the California Court would restrict liability under such policies to the exact confines of the common-law tort of unfair competition is not crucial in this case; the Court's opinion leaves no doubt that investors' claims of the type in issue in this case do not qualify as "damages" from "advertising injury" caused by "unfair competition," as those terms appear in the context of National Union's policies. *Some* substantial component of competitive injury is required.

It is not possible to characterize the claims of the investors who are suing Keating as ones for common-law unfair competition or any approximation of that tort. They are not claims for redress of competitive injury.

Even if, as Keating argues, they include allegations of "palming off" of uninsured bonds as federally insured deposits, the investors' complaints are not based on injury to Keating's competitors. Any liability ensuing from those claims cannot be brought within the policies' coverage.

Keating correctly points out that *Bank of the West* did not involve a duty to defend. Nevertheless, *Bank of the West* made clear that there was not even a *potential* for coverage under National Union's policies in this case. The district court accordingly erred in ruling that National Union had a duty to defend the investors' claims as claims for "advertising injury" caused by "unfair competition."

*Bodily Injury*

The policies also extended coverage for damages to "bodily injury" arising out of an "occurrence." The district court held that this clause imposed a duty on National Union to defend the Keating insureds against third-party claims. One of the third-party complaints alleged that the plaintiff investors suffered "emotional and physical distress, and impairment of health." We need not address several of the issues that the district court's decision raises, for we conclude that one point is dispositive and requires reversal.

■ California law requires that an insurer defend its insured against third-party claims which give rise to potential liability under the policy. *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 54 Cal.Rptr. 104, 113, 419 P.2d 168, 177 (1966). Although the duty to defend is broader than the duty to indemnify, it is not absolute. The Keating insureds bear an initial burden of showing that an alleged event gave rise to a claim within the scope of the policy coverage. *Allstate v. Interbank Financial Services*, 215 Cal.App.3d 825, 264 Cal.Rptr. 25, 27 (1989).

■ The Keating insureds have failed to carry that burden. The injuries that the third-party plaintiffs allegedly suffered, including emotional and physical distress, arose from economic loss. Economic loss is not damage or injury to tangible property covered by a comprehensive general liability policy. *Giddings v. Industrial Indemnity Co.*, 112 Cal.App.3d 213, 169 Cal.Rptr. 278, 281 (1980).

*Allstate* illustrates this principle. In that case a life insurance sales firm sought coverage under a standard business liability policy that provided coverage for "bodily injury" and "property damage" in terms nearly identical to the policy at issue here. Third-party plaintiffs alleged that the firm had conspired to convince them to make unsound investments. In denying coverage, the court observed:

> The policy covers losses resulting from accidental events which cause bodily injury or property damage, not the giving of professional or investment advice ... Here, although the insureds attempt to characterize the claims differently, the clear bases of the complaints are that the insureds gave poor professional advice and the plaintiffs lost money in a tax shelter investment.

> Had these insureds desired to obtain a professional liability policy to protect them from charges resulting from the performance of professional services, such insurance could have been obtained ... [J]ust as an insurer would not reasonably expect that a business liability policy would cover claims for securities fraud, these insureds could not reasonably expect that such claims would be covered under this policy.

*Allstate*, 264 Cal.Rptr. at 27–28.

■ Economic loss of the sort alleged by the investors is accordingly not potentially within the coverage of National Union's policies. Nor, in our view of California law, is emotional and physical distress induced by an uncovered economic loss. It would expand coverage of these policies far beyond any reasonable expectation of the parties to sweep within their potential coverage any alleged emotional or physical distress that might result from economic loss that is itself clearly outside the scope of the policy. *See Chatton v. National Union Fire Ins. Co.*, 10 Cal.App. 4th 846, 13 Cal.Rptr.2d 318, 327 (1992) (no coverage under property damage clause for bodily injury arising from negligently inflicted economic loss not qualifying

as "property damage").[1]  The Keating insureds had no reasonable expectation that these policies insured them against claims arising from bad investment advice.

*Conclusion*

National Union's policies do not require National Union to defend Keating against any of the claims brought in the underlying investor lawsuits.  National Union did not act unreasonably in denying a defense to Keating.  The district court erred in granting summary judgment to Keating and Ligget on their declaratory judgment claims.

The district court's partial summary judgment is reversed, and the matter is remanded for further proceedings consistent with this opinion.

**REVERSED**

---

1. *Chatton* distinguished the district court's published opinion in this case on the ground that the district court had found that negligent supervision could be an "occurrence" causing a bodily injury within the meaning of the comprehensive general liability policies.  *See Chatton,* 13 Cal. Rptr.2d at 328.  In so describing the district court's ruling, *Chatton* did not necessarily endorse it.  In any event, the distinction pointed out by the *Chatton* court is irrelevant to the approach we adopt.  Even if negligent supervision is an "occurrence," it caused economic harm not within the potential coverage of the policies.  Coverage for emotional and physical distress arising from that economic loss cannot have been within the parties' reasonable expectations of coverage.  Therefore, the conduct of the Keating insureds provides no basis for potential liability under the National Union policies.