Filed 7/21/16  Portugal v. Western World Ins. Co. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| SYLVIA PORTUGAL, | C067875 |
| Plaintiff and Respondent, | (Super. Ct. No. 34200900034576CUBTGD) |
| v. | |
| WESTERN WORLD INSURANCE COMPANY, | |
| Defendant and Appellant. | |

In this case, a judgment creditor seeks to collect on an underlying judgment from the insurer of the judgment debtor who defaulted in the underlying action for unpaid wages and employment benefits.  The judgment creditor action was filed under subdivision (b)(2) of Insurance Code section 11580,[1] which authorizes a direct lawsuit by a judgment creditor against the insurer of the judgment debtor under certain circumstances.

---

[1] Further undesignated statutory references are to the Insurance Code.

1

Plaintiff Sylvia Portugal, as representative of a class of former employees, filed the underlying action against her former employer, Carequest, Inc. dba Real Care, an in-home provider of household services for elderly and disabled persons. Real Care had commercial general liability (CGL) and professional liability insurance through Western World Insurance Company (Western). The underlying action was for unpaid wages, overtime, and penalties. Western declined to defend or indemnify Real Care in the underlying lawsuit, contending that plaintiffs did not have standing under section 11580, subdivision (b)(2), since their lawsuit was not an action based upon bodily injury, death, or property damage and the insurance policies did not cover the employees' claims. Real Care defaulted in the underlying action, and it is not a party to this appeal.

In this action by Portugal against Western, the trial court granted summary judgment to Western. The court ruled that Portugal and her class lacked standing under section 11580, because the underlying claims were for wages and employment benefits, which were intangible economic interests, not bodily injury, death, or property damage. The trial court also found that the underlying claims were not covered occurrences under the insurance policies or were expressly excluded.

Portugal appeals from the judgment in favor of Western, arguing triable issues preclude summary judgment.

We affirm.[2]

---

[2] In addition to the judgment creditor claim against Western, Portugal's complaint asserts claims against others, alleging that Real Care fraudulently conveyed its assets to alter egos. Our affirmance of summary judgment in favor of Western does not affect the remaining counts. (*Cuevas v. Truline Corp*. (2004) 118 Cal.App.4th 56, 61; *Millsap v. Federal Express Corp*. (1991) 227 Cal.App.3d 425, 430 [where summary judgment disposes of all issues involving one of multiple defendants, a separate appealable judgment can be entered as to that defendant].)

On August 11, 2010, while the trial court was considering Western's summary judgment motion, Portugal filed another state court action against Western, alleging she

2

## FACTUAL AND PROCEDURAL BACKGROUND

The operative pleading in the underlying lawsuit was a first amended complaint for damages and equitable relief filed by Portugal against Carequest Inc., dba Real Care, for: (1) failure to pay overtime and other wage compensation in violation of California labor laws; (2) violation of Business and Professions Code section 17200 et seq. (unfair business practices); and (3) a demand for an accounting. The trial court certified the suit as a class action.

The complaint against Real Care alleged that Real Care, an in-home service provider of household services and assistance for the elderly and invalid, employed Portugal and the class as " 'Caregivers,' " the job duties of which "included housework, errands, shopping, and meal preparation and other . . . job tasks [not exempt from wage laws]." The complaint further alleged that Real Care improperly classified plaintiff and the class as " 'personal attendants' " exempt from overtime wages and "[f]ailed to pay overtime, provide meal and rest breaks and failed to pay all hourly wages due to non-exempt employees . . . ."

Portugal's complaint against Real Care sought "payment, on behalf of herself and all other similarly situated individuals, for overtime wages owed, unprovided meal and rest breaks, a full accounting and payment for all other minimum and/or legally required wages owed, plus all penalties, benefits, and interest, based on sums that were withheld, unaccounted for, and/or not paid by DEFENDANTS. PLAINTIFF also seeks, on behalf of herself and all other similarly situated, attorneys fees and costs and any and all other

---

and the class were suing as assignees of Real Care through a written assignment from Real Care, but Western removed that case to federal court on the basis of diversity jurisdiction. (*Portugal v. Western World Ins.* (E.D.Cal. Aug. 22, 2012, No. 2:10-cv-02498-MCE-JFM) 2012 U.S. Dist. Lexis 119172.) On August 22, 2012, the federal court stayed the federal court action pending resolution of this appeal. (*Ibid*.) In the case before us, although Portugal's opposition papers to summary judgment argued a direct right of action as assignee, Portugal's counsel told the trial court at the summary judgment hearing that this case is not predicated on assignment of rights.

amounts as provided by statute." The pleading also sought an injunction prohibiting Real Care from requiring its Caregivers to work without meal/rest breaks or to work overtime without overtime pay.

The pleading further alleged: "PLAINTIFF has suffered actual financial losses and damage to her property rights and has standing to, and does, seek restitution and disgorgement of all sums wrongfully obtained by DEFENDANTS in violation of the Business & Professions Code section[] 17200 *et seq.*, to prevent the DEFENDANTS from benefitting from its violation of law and/or unfair acts. PLAINTIFF is also entitled to costs, attorney's fees, interest and penalties as provided for by the California Labor Code and Business & Professions Code, and the Private Attorney General's Act, California Civil Procedure Code section 1021.5."

The class action allegations stated, "Contrary to DEFENDANTS' characterization of this job as 'exempt' in order to avoid paying overtime, PLAINTIFF and other Caregivers were required to perform daily tasks that fall outside any possible exemption claim under California law. The majority of the job duties required by Caregivers include: cooking, cleaning, running errands, and doing laundry, none of which falls under the 'personal attendant' exemption of Wage Order 15-2001 and/or any other exemption. . . ." In performing their job duties, the class members "were routinely required to work in excess of 8 hours per day and/or 40 hours per week" without overtime pay, were not provided with a fair accounting of all hours worked, and were "deprived of meal breaks and rest breaks in violation of California law."

The first count in the underlying pleading against Real Care was for "FAILURE TO PAY OVERTIME AND WAGES IN VIOLATION OF CALIFORNIA LABOR CODE AND APPLICABLE WAGE ORDERS AGAINST ALL DEFENDANTS."

The second count was for "UNFAIR BUSINESS PRACTICES" (Bus. & Prof. Code, § 17200 et seq.), which alleged Portugal and the class "ha[d] not been paid all wages and benefits due to [them] through [their] employment" and "ha[d] suffered

4

property damage and/or financial loss in the form of unpaid overtime and other wages and benefits." Portugal and the class "have suffered injury . . . by way of lost wages and tangible property benefits as a result of the unfair competition alleged herein."

A third count in the underlying lawsuit sought an "ACCOUNTING" to determine the amount of overtime wages and other compensation owed.

Real Care tendered defense of the lawsuit to Western, but Western responded with a letter declining to provide coverage or defense, asserting that the CGL insurance policies did not provide coverage for the claims. The letter explained there was no coverage under the CGL policies' "Coverage A," bodily injury and property damage liability, because there were no allegations of property damage or bodily injury caused by an occurrence, plus the insurance did not cover the employer's liability for unpaid wages and overtime. The letter explained there was no coverage under the CGL policies' "Coverage B," personal and advertising injury liability, because the complaint's allegations did not fall within the policy definitions, plus the policies contained an exclusion for employer's liability. The letter stated Western reserved the right to assert any additional terms, conditions, exclusions and/or policy provisions to deny coverage and that nothing in the letter constituted a waiver or estoppel of Western's right to assert additional defenses.

Real Care filed an answer to the underlying complaint, but the trial court later ordered the answer stricken and default was entered after Real Care, which went out of business, refused to respond to discovery requests because the company was defunct.

Thereafter, the trial court held a hearing on the amount of damages.

After the default prove-up hearing on damages, Portugal's counsel sent a letter to Western, advising that a default had been entered and a default judgment would be forthcoming, and tendering the claims to Western for indemnity.

Western responded with a second letter explaining in detail that the claims made in the underlying lawsuit were not covered by the insurance policies, because the claims

5

were for economic loss for unpaid wages/benefits, which were not covered by the insurance policies.[3]  Western had issued six successive one-year policies of CGL and professional liability insurance during the pertinent period.  The CGL policies by their own terms applied only to " '*bodily injury*' "[4] or " '*property damage*' "[5] "caused by" an " '*occurrence*,' "[6] or " 'personal and advertising injury.' "[7]  Moreover, the CGL policies expressly excluded from coverage (1) bodily injury or property damage "expected or intended from the standpoint of the insured" (expected or intended injury), (2) bodily injury or property damage "for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement [with exceptions inapplicable here]" (contractual liability), (3) personal and advertising injury "[a]rising out of breach

---

[3]  Western's letter erroneously stated this was its first notice of the underlying lawsuit.  Portugal noted that Real Care had previously tendered defense of the lawsuit to Western and she makes much of this oversight here.  For purposes of this appeal, it does not matter when Western learned of the underlying lawsuit, because Western never had a duty to defend or indemnify Real Care, as we explain *post*.

[4]  The insurance policies defined " '[b]odily injury' " as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

[5]  The insurance policies defined " '[p]roperty damage' " as "a. *Physical injury to tangible property*, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or  [¶]  b. *Loss of use of tangible property* that is not physically injured.  *All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it*."  (Italics added.)

[6]  The insurance policies defined " '[o]ccurrence' " as "*an accident*, including continuous or repeated exposure to substantially the same general harmful conditions."  (Italics added.)

[7]  The insurance policies defined " '[p]ersonal and advertising injury' " as "injury, including consequential 'bodily injury,' arising out of one or more of the following offenses" -- false arrest/detention/imprisonment, malicious prosecution, wrongful eviction/entry into private dwelling, slander or libel, privacy violation, use of another's advertising idea in the insured's advertisement, or infringing on another's copyright, trade dress, or slogan in the insured's advertisement.

of contract," and (4) bodily injury or personal and advertising injury "arising out of any: [¶] . . . [¶] [e]mployment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person . . . ."

As to the professional liability policies, Western asserted that they provided coverage for " '*bodily injury,*' '*property damage*' or '*personal injury*' . . . caused by '*professional incident.*' "[8]  The policies expressly excluded injury or damage "for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement" (contractual liability) and they expressly excluded injury to "[a]n 'employee' of the insured arising out of and in the course of:  [¶]  (a) Employment by the insured; or  [¶]  (b) Performing duties related to the conduct of the insured's business. . . ."

Western's second letter explained the claims "are not covered by the general liability/professional liability policies issued to Real Care.  The under payment of wages to hourly employees does not constitute an '*occurrence*' under a general liability policy, or a '*professional incident*' under a professional liability policy.  Also, the underpaid wage claims seek recovery for 'economic loss' which does not constitute '*bodily injury*[*,*']* '*property damage*[*,*']* or '*personal and advertising injury*' under either the general liability or professional liability coverage provided by the Western World policies.  The under payment of wage claims are further excluded by the policies' '*employment related practices*' exclusion and '*contractual liability*' exclusion.  The policies' '*expected or intended injury*' exclusion and '*employer's liability*' exclusion also

---

**8**  The policies defined " '[p]rofessional [i]ncident' " as "*any negligent act or omission*: [¶]  (a) In the furnishing of healthcare services . . . ;  [¶]  (b) In the rendering of any other professional services but only of the type described in the 'Schedule' of this coverage part [which included 'Home Health Care']."  (Italics added.)

exclude coverage for the underpaid wage claims. The claims for punitive damages asserted against Real Care are further excluded by Insurance Code Section 533's prohibition of coverage for '*willful acts*' and the policies' '*punitive damages*' exclusion."

After receiving Western's second letter, Portugal's counsel submitted a proposed default judgment for the trial court to sign, in which Portugal's counsel included language stating Real Care had caused damages "and *withheld tangible property* of Plaintiff and Plaintiff Class which was due and owing to them during the class period . . . ," even though the operative complaint did not include that language or theory.[9] (Italics added.)

The trial court signed the judgment as proposed by Portugal's counsel, including the "withheld tangible property" language. The default judgment awarded Portugal's class approximately $23 million against Real Care.

Thereafter, Portugal filed the instant lawsuit as a judgment creditor lawsuit against Western under section 11580, subdivision (b)(2).[10] The same pleading alleged other causes of action for fraudulent conveyance and alter ego against Real Care's owner and

---

[9] As we explain, *post,* the insertion of "withheld tangible property," a theory not alleged in the operative complaint, does not help Portugal.

[10] Section 11580 provides in pertinent part: "A policy insuring against losses set forth in subdivision (a) [including insurance against loss or damage resulting from liability for injury suffered by another person other than worker's compensation] shall not be issued or delivered to any person in this state unless it contains the provisions set forth in subdivision (b). Such policy, whether or not actually containing such provisions, shall be construed as if such provisions were embodied therein. [¶] . . . [¶] (b) Such policy shall not be thus issued or delivered to any person in this state unless it contains all the following provisions: [¶] (1) A provision that the insolvency or bankruptcy of the insured will not release the insurer from the payment of damages for injury sustained or loss occasioned during the life of such policy. [¶] (2) A provision that whenever judgment is secured against the insured or the executor or administrator of a deceased insured in *an action based upon bodily injury, death, or property damage*, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment." (Italics added.)

subsequent business entity which are not parties to this appeal. The only count alleged against Western is the fourth cause of action, which alleged that, "plaintiff obtained a judgment against . . . *Real Care* . . . for damages in the amount of $23,222,507.00, [plus interest], for personal injury and property damage suffered by Plaintiff and the Plaintiff Class as the proximate result of the negligence of the insured."

The complaint alleged that, under the insurance policies, Western "agreed to 'pay those sums the insured becomes legally obligated to pay as damages because of any 'bodily injury,' 'property damage' or 'personal injury' to which this coverage part applies caused by a 'professional incident.' Plaintiff is informed and believes that the professional liability coverage part does not define the specific term 'personal injury' used in the professional liability coverage part and that the judgment for Plaintiff and the Plaintiff Class is for 'personal injury[,'] as that term is reasonably understood by a lay person and interpreted against an insurer, caused by a 'professional incident.' Plaintiff is informed and believes the judgment is covered as 'property damage' caused by an occurrence." The complaint also alleged, "Plaintiff is informed and believes that Plaintiff and the Plaintiff Class are 'temporary workers' within the meaning of the policies who worked temporary assignments in the insured's clients' homes to meet short term[] work loads. Plaintiff alleges individually and on behalf of the Plaintiff Class that their judgment is not excluded under the terms of the policies."

The complaint also alleged plaintiff's class was a third party beneficiary of the insurance contracts between Real Care and Western, such that Western owed a duty of good faith and fair dealing to plaintiff's class, and Western breached that duty by refusing to pay on the underlying judgment.

Western moved for summary judgment on two alternative grounds: (1) Portugal and the class lacked standing to sue under section 11580 because the claims were not based on bodily injury, death, or property damage; and (2) the lawsuit was for wages and employment benefits, which were not even potentially covered under the insurance

9

policies. Western submitted copies of the insurance policies, attached to a declaration by Western claims consultant Richard Hazard. Western's separate statement of undisputed facts asserted that plaintiff provided "in-house medical services to Real Care's clients." The separate statement quoted the allegations from the underlying complaint as to what claims were being made, quoted the insurance policy provisions, and cited its two letters to plaintiffs explaining denial of the tender of defense.

Portugal opposed the motion, arguing Western failed adequately to investigate the claims and was bound by the default judgment's reference to " 'withheld tangible property.' " Portugal argued triable issues existed regarding coverage. Whereas Western's separate statement of undisputed facts asserted (incorrectly) that Real Care provided "medical services," Portugal's response disputed that assertion and noted (correctly) that "the complaint does not allege 'in-house medical services'−see description of non-medical professional services."

Portugal did not dispute the contents of the insurance policies but objected on grounds of irrelevance as well as lack of foundation, authentication, and personal knowledge of the declarant, Western claims' consultant Hazard, who submitted true and correct copies of the insurance policies, because there was no foundation that Hazard worked in the underwriting department. The trial court overruled Portugal's objections.

Portugal also presented her own separate statement purporting to contain additional undisputed facts. She cited an "Industrial Welfare Commission Wage Order NO. 15,"[11] addressing "personal attendants," and she presented a declaration from her

_____

[11] The Industrial Welfare Commission (IWC) is authorized to issue wage orders fixing wages, hours, and working conditions. (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1026-1027.) According to Wage Order No. 15, " '[p]ersonal attendant' " includes persons employed "by any third party employers recognized in the health care industry to work in a private household, to supervise, feed, or dress a child or person who by reason of advanced age, physical disability, or mental deficiency need

10

human resources management expert and consultant, Richard Danehy, opining that "[p]rofessional incidents" alleged in the underlying lawsuit included the furnishing of professional services, and factual disputes existed concerning whether or not Real Care's services were "home health care services" or other professional services within the scope of the insurance policies. Portugal submitted her own declaration attesting she "sustained personal injury, damages and harm . . . ," and attaching her employment agreement, pay records, and a Real Care brochure. Additionally, Portugal submitted a declaration by her insurance claims expert, David Peterson. Portugal also submitted a declaration from her attorney, Michael Parks, arguing a dispute existed over Western's first coverage declination letter, because it was unsigned, bore no letterhead, and Western's second letter said it was previously unaware of the claim which, according to Parks, should preclude Western from denying coverage.

The trial court sustained Western's evidentiary objections to Danehy's entire declaration on grounds of hearsay, lack of personal knowledge, confusion of issues and undue prejudice, lack of foundation, and irrelevance. The trial court sustained Western's evidentiary objections to Peterson's declaration on grounds it merely presented argument. The trial court sustained Western's objection to the portion of Parks's declaration in which Parks argued that a dispute existed as to whether Western's first declination letter should be disregarded.

Following a hearing, the trial court entered judgment in favor of Western based on the court's written order granting summary judgment, in which the court ruled as follows: Portugal and her class lacked standing to bring a judgment creditor suit under section 11580, because the statute authorized suit only where the underlying judgment was based upon bodily injury, death, or property damage. The judgment to compensate Portugal's

---

supervision. The status of 'personal attendant' shall apply when no significant amount of work other than the foregoing is required."

11

class for unpaid wages and overtime and meal and rest breaks was not a judgment based upon bodily injury, death, or property damage. The default judgment's reference to " '*withheld* tangible property' " did not alter that conclusion. Additionally, section 11580 states any action against the insurer is subject to the terms and limitations of the insurance policy, and therefore no such action could lie if the underlying claims were not potentially covered by the insurance policies.

The trial court went on to explain that the class action claims for wages and employment benefits were not potentially covered under the terms of any of the insurance policies, for the following reasons: "Unpaid wages and overtime are intangible, economic interests." They are not physical injury to or loss of use of tangible property within the definition of " 'property damage.' " They are not " 'bodily injury' " under the policy language and under case law. " 'CGL policies do not provide coverage for economic losses that cause emotional distress.' " They are not " 'personal and advertising injury' " under the policies, which list " 'false arrest, malicious prosecution, wrongful eviction, libel and slander, right of privacy, misappropriation of advertising idea, or copyright or trade dress infringement in advertising.' " Unpaid wages and overtime are not property damage, bodily injury, or personal and advertising injury caused by a " 'professional incident' " under the policies. Real Care did not provide medical or other professional services; it provided household services. Real Care's failure to pay statutory wage and employment benefits to its employees was not caused by a negligent act or omission in furnishing healthcare services to third parties. The failure to pay wages and other benefits was not an " 'occurrence' " under the CGL policies, which defined " 'occurrence' " as an accident. (See fn. 6, *ante*.) The failure to pay wages and employment benefits was excluded from coverage by the CGL policies' exclusions for " 'contractual liability,' " " 'employment related practices,' " and " 'expected or intended injury.' "

12

# DISCUSSION

## I. Standard of Review

A defendant may move for summary judgment on the ground that the action has no merit. (Code Civ. Proc., § 437c, subd. (a).) A motion for summary judgment should be granted if the submitted papers show that "there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A defendant meets his burden of showing that a cause of action has no merit if it shows that one or more elements of the cause of action cannot be established, or that there is a complete defense. (Code Civ. Proc., § 437c, subd. (p)(2).) Once the defendant has met that burden, the burden shifts to the plaintiff to show that a triable issue of material fact exists. (*Ibid*.)

The burden of persuasion remains with the party moving for summary judgment. (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 850, 861.) When the defendant moves for summary judgment, in those circumstances in which the plaintiff would have the burden of proof by a preponderance of the evidence, the defendant must present evidence that would preclude a reasonable trier of fact from finding that it was more likely than not that the material fact was true (*id*. at p. 851), or the defendant must establish that an element of the claim cannot be established, by presenting evidence that the plaintiff does not possess and cannot reasonably obtain, needed evidence. (*Id*. at p. 854.) We review the record and the determination of the trial court de novo. (*Merrill v. Navegar, Inc*. (2001) 26 Cal.4th 465, 476; *Kahn v. East Side Union High School Dist*. (2003) 31 Cal.4th 990, 1003; *Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.)

" 'First, we identify the issues raised by the pleadings, since it is these allegations to which the motion must respond; secondly, we determine whether the moving party's showing has established facts which negate the opponent's claims and justify a judgment in movant's favor; when a summary judgment motion prima facie justifies a judgment,

13

the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue.' " (*Waschek v. Dept. of Motor Vehicles* (1997) 59 Cal.App.4th 640, 644.)

## II. Plaintiff's Summary Adjudication Argument

Plaintiff argues the trial court, after erroneously concluding she lacked standing under section 11580, erroneously moved into summary adjudication of insurance coverage issues, even though Western did not move for summary adjudication. We disagree.

A party may move for summary adjudication of a legal issue or a claim for damages that does not completely dispose of a cause of action, an affirmative defense, or an issue of duty. (Former Code Civ. Proc., § 437c, subd. (f)(1).) Special procedural requirements apply to summary adjudication motions. (*Ibid*.) A party may move for summary adjudication as an alternative to summary judgment, but the motion must clearly so state. (*Id.* at subd. (f)(2).) When a party has moved for summary judgment, a trial court may not grant summary adjudication unless the party has alternatively moved for summary adjudication. (*UDC-Universal Development v. CH2M Hill, L.P.* (2010) 181 Cal.App.4th 10, 25.)

Western did not move for summary adjudication, nor did it need to do so. It eliminated, one by one, each possible basis for the lawsuit against it in its motion for summary judgment.

Portugal claims the trial court unfairly treated Western's summary judgment motion as a summary adjudication motion on a list of coverage issues. She claims "unfairness . . . is manifest in this case," because Western asserted " 'eight or nine different independent grounds for summary judgment, all of which were absolutely conclusive on the matter' " according to Western, yet Western "never made a separate noticed motion for summary adjudication."

14

Plaintiff apparently misunderstands summary adjudication. Had the trial court determined that some of Western's points had merit but others did not, it would have been improper for the court to enter an order granting summary adjudication as to the former points. However, the trial court's determination that all of Western's points had merit justified entry of summary judgment. There was no need for, and no ruling on, summary adjudication.

## III. Evidentiary Rulings

Near the end of her opening brief on appeal, Portugal challenges the trial court's evidentiary rulings. Resolution of these evidentiary claims is required before we address the contentions about triable issues.

## A. Exclusion of Evidence

### 1. Exclusion of the Danehy Declaration

Portugal argues the trial court erroneously excluded the declaration of Danehy on various grounds: hearsay, lack of personal knowledge, lack of foundation, lack of qualification as an insurance expert, irrelevance, and causing confusion of issues and undue prejudice. Portugal claims Danehy's declaration established triable issues as to how " 'home health care' " and " 'personal attendant' " professional services furnished by Real Care were interpreted and that this issue existed in connection with Real Care's business operations. However, Danehy's declaration merely expressed a tentative opinion that a factual dispute existed as to whether the claims involved home health care services or other professional services. His opinion was of no assistance to the court and was irrelevant, and we therefore need not address the other grounds for exclusion.[12]

---

[12] While this appeal was pending, Portugal sent us a letter noting the publication of *Cash v. Winn* (2012) 205 Cal.App.4th 1285. The court in *Cash* held a home care employee was a personal attendant and thus exempt from statutory overtime requirements because her health care tasks were an incidental or minor part of her job. (*Id.* at pp. 1299-1300.) The *Cash* court further held the trial court erred in instructing the jury that the personal

15

## 2. Exclusion of the Peterson Declaration

Portugal argues the trial court had erroneously stricken the entire Peterson declaration. Portugal asserts, "The only basis identified by the trial court, that Peterson's declaration contains argument, is an insufficient basis to strike the entire declaration. [Citation.] Based on the Court's final order ruling on objections, portions of the Peterson declaration offering testimony fatal to Western World's claim that it did not owe a potential for coverage and acted reasonably, was admitted into evidence. [Citations.] This evidence demonstrated that there were material factual disputes that Western World acted in bad faith and did not properly consider or investigate potential coverage for the underlying class action lawsuit against its insured after Western World when the complaint was tendered."

If Portugal means "portions" of the declaration were not argument and therefore should have been admitted, she has not specified what portions to which she refers. Nor does she offer any legal authority. We accordingly disregard this contention as inadequately briefed. (*In re Marriage of Nichols* (1994) 27 Cal.App.4th 661, 672, fn. 3 [reviewing court may disregard contentions unsupported by factual and/or legal analysis].)

In any event, Peterson's declaration did not show a potential for coverage but merely complained about how Western handled the tender of defense, arguing Western acted in bad faith and failed adequately to investigate and evaluate the claims. As we explain *post*, there was no potential coverage here, and therefore it does not matter how Western handled the claim.

Accordingly, we reject Portugal's challenges to the trial court's exclusion of evidence.

---

attendant exemption was inapplicable when employees regularly performed any health care services. (*Id.* at p. 1304.) *Cash* does not help Portugal.

16

## B. Admission of Hazard's Declaration

Portugal contends the trial court improperly admitted evidence offered by Western. She filed objections to Richard Hazard's declaration and its Exhibit G (Western's first declination letter) on grounds including lack of authentication or personal knowledge regarding the letter or the claims handling on the file. On appeal, Portugal's argument consists only of the following: "The Hazard declaration did not properly authenticate or explain the creation or maintenance of the draft letter or how it was handled, if at all, as a business record and the trial court erred in admitting Mr. Hazard's testimony and this document into evidence." Portugal cites no legal authority whatsoever on this point, and we therefore disregard the contention. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.)

Portugal also contends Western refused to produce its underwriting or claims files. She cites to Western's discovery response asserting attorney-client privilege and work-product privilege. She fails to cite to any discovery motion to compel production or any court order ordering production.

Portugal fails to show erroneous admission of evidence.

## IV. Standing

Portugal argues the trial court erroneously determined that because this case did not involve bodily injury, wrongful death, or property damage, Portugal and the class lacked standing under section 11580. Portugal argues the statute's limitations do not matter, because she had independent standing under the insurance policies, which contained language broader than the statute. Western's policies said, " 'a person . . . may sue us to recover . . . on a final judgment against an insured obtained after an actual trial . . . .' " Portugal argues all she needed for standing was a judgment obtained after a trial, and the default judgment obtained after the default prove-up hearing satisfied this requirement.

17

However, "standing" is a misnomer, which was improperly used by Western and adopted by the trial court. An injured third party is generally prohibited from suing a tortfeasor's insurer for failing to defend or indemnify the insured against the claim, but exceptions exist where the third party plaintiff has a judgment against the insured, where the insured has assigned its rights under the policy to the third party, or where the insurer sues the third party in a declaratory relief action. (*Otay Land Co. v. Royal Indemnity Co.* (2008) 169 Cal.App.4th 556, 560-561.)

Portugal has a judgment against the insured and therefore has standing to sue the insurer under section 11580. But she cannot prevail in her lawsuit against the insurer if the underlying judgment is not based on *bodily injury, death, or property damage*. Western's cited authority does not say that a person *lacks standing* under section 11580 if the underlying judgment is not based on bodily injury, death, or property damage. (*Xebec Development Partners, Ltd. v. National Union Fire Insurance Co.* (1993) 12 Cal.App.4th 501, 526-527 (*Xebec*), overruled on other grounds in *Essex Ins. Co. v. Five Star Dye House, Inc.* (2006) 38 Cal.4th 1252, 1265). In *Xebec*, under a subheading titled, "*Standing*," the appellate court said the plaintiff claimed standing as an *assignee* of the insured; the insurer did not question that status; and the *Xebec* court said the assignment appeared to have been entirely orthodox. (*Xebec*, at pp. 526-527.) The *Xebec* court went on to say that the plaintiff suggested shortly before trial that it could also sue under section 11580, but the trial court apparently never ruled on a motion to amend the complaint. (*Xebec*, at p. 527.) The court said, "In any event [the plaintiff] could not properly have proceeded under subdivision (b)(2) [of section 11580], because [its] underlying action against [the insureds] patently was not 'based upon bodily injury, death, or property damage' within the meaning of the section." (*Ibid*.) Thus, *Xebec* did not say the plaintiff lacked standing to sue under section 11580, but rather that the plaintiff could not prevail under section 11580.

Here, the underlying judgment gave Portugal standing to file the lawsuit under section 11580, but the absence of any bodily injury, death, or property damage as the basis for the underlying judgment -- as we discuss *post* -- prevents her from prevailing. That the trial court adopted the wrong word ("standing") does not affect our resolution of this appeal, because we review the trial court's ruling, not its reasoning, and we may affirm the judgment for reasons different from the trial court's reasons. (*Troche v. Daley* (1990) 217 Cal.App.3d 403, 407-408.)

## V. Summary Judgment

Plaintiff argues triable issues of material fact exist, precluding summary judgment. We disagree.

Where an insurer tortiously refuses to defend and as a consequence the insured suffers a default judgment, the insurer is liable on the judgment against the insured. (*Amato v. Mercury Casualty Co.* (1997) 53 Cal.App.4th 825, 833 (*Amato*).) A liability insurer's duty to defend an insured in a lawsuit filed by a third party is broader than the insurer's duty to indemnify; it therefore may owe a duty to defend its insureds even when a trier of fact might ultimately determine that the policy does not entitle them to indemnity for the claims against them. (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 300 (*Montrose Chemical*); *Gonzalez v. Fire Ins. Exchange* (2015) 234 Cal.App.4th 1220, 1229 (*Gonzalez*).) Whether the insurer owes a duty to defend turns not on whether the insured proves to be actually entitled to be indemnified for the underlying claim, but only on those facts known by the insurer at the inception of a third party lawsuit, along with facts extrinsic to the complaint that may also reveal a possibility that the claim may be covered by the policy. (*Montrose Chemical*, at p. 295; *Gonzalez*, at p. 1229.)

The insurer's *coverage* obligation begins whenever the insurer becomes aware of facts giving rise to the potential for coverage, and continues until it has been established that there is no potential for coverage. (*Montrose Chemical, supra*, 6 Cal.4th at p. 295.)

A liability insurer's duty to *defend* arises when a suit against its insured seeks damages that are *potentially within the policy's coverage*. (*Gonzalez, supra*, 234 Cal.App.4th at p. 1229; *La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co*. (1994) 9 Cal.4th 27, 43 (*La Jolla*).) If the claim against an insured cannot, by any conceivable theory, raise an issue that would bring it within the policy's coverage, the insurer has no duty to defend its insured. (*Gonzalez*, at p. 1230; *La Jolla*, at p. 43.) The duty to defend "does not depend on the labels given to the causes of action in the [underlying claims against the insured]; instead it rests on whether *the alleged facts or known extrinsic facts* reveal a *possibility* that the claim may be covered by the policy." (*Atlantic Mutual Ins. Co. v. J. Lamb, Inc*. (2002) 100 Cal.App.4th 1017, 1034.)

"In order to prevail on an insurer's motion for summary judgment based on the absence of a duty to defend, 'the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*.' [Citation.] Once the possibility of coverage arises, '[a]ny doubt as to whether the facts establish [or defeat] the existence of the defense duty must be resolved in the insured's favor.' " (*Travelers Property Casualty Company of America v. Charlotte Russe Holding, Inc*. (2012) 207 Cal.App.4th 969, 977, fn. omitted [summary judgment based on absence of duty to defend was improper where there was potential coverage for product disparagement in underlying claim], disapproved as stated in *Harford Casualty Ins. Co. v. Swift Distribution, Inc*. (2014) 59 Cal.4th 277, 295.) While a complaint is to be liberally construed in favor of potential coverage, the insurer has no duty to defend where the potential for liability is " ' " 'tenuous and farfetched.' " ' " (*Gonzalez, supra*, 234 Cal.App.4th at p. 1230.)

Even where the defendant has moved for summary judgment, the insured has the burden of proving her claim falls within the scope of the policy's basic coverage. (*Gonzalez, supra*, 234 Cal.App.4th at p. 1230.) In contrast, when an insurer seeks

summary judgment on the ground that the claim is excluded, the insurer has the burden to conclusively show the claim falls within an exclusion. (*Id*. at pp. 1230, 1237, 1245.)

As indicated, section 11580, subdivision (b)(2), requires insurance policies to contain a provision "that whenever judgment is secured against the insured . . . in an action based upon bodily injury, death,[13] or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment." (See fn. 10, *ante*.) Additionally, Portugal contends there was potential coverage on the policies independent of section 11580, subdivision (b)(2).

Here, Western's motion established that: (1) the underlying action was for intangible economic loss and was not based on bodily injury or property damage, because the claims did not meet the CGL insurance policy definitions for " '*bodily injury*,' " " '*property damage*,' " or " 'personal and advertising injury' "; (2) even if the claims had met those definitions, they were not caused by any " 'occurrence,' " i.e., an "accident," as required for coverage; (3) even if caused by an occurrence, they were excluded from coverage by the policy exclusions for employer liability and/or contractual liability; (4) the claims did not meet the professional liability policy definitions for bodily injury, property damage, or personal injury caused by a professional incident; and (5) even if they met the professional liability policy definitions, coverage was excluded for injury to the insured's employee arising out of and in the course of the employment or performing duties related to the conduct of the insured's business.

Injury to intangible economic interests does not amount to injury to tangible property and therefore does not constitute property damage for insurance coverage. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 17 [the focus of coverage for

---

**13** Portugal does not contend "death" was a triable issue. We therefore omit further reference to death.

21

property damage is the property itself, not intangible economic losses or nonperformance of contractual obligations, and policy covering physical injury to tangible property precluded coverage for intangible economic losses]; *Low v. Golden Eagle Ins. Co*. (2002) 99 Cal.App.4th 109, 113-114 [liability insurer whose policy covered bodily injury and property damage had no duty to defend consumer class-action complaint seeking recovery of economic losses from manufacturer of diet products]; *Hurley Construction Co. v. State Farm Fire & Casualty Co*. (1992) 10 Cal.App.4th 533, 539 [fraud by a contractor overcharging to repair properties was economic loss, not tangible property damage]; *Chatton v. National Union Fire Ins. Co*. (1992) 10 Cal.App.4th 846, 857-860 [investment losses do not constitute physical injury to tangible property]; *Devin v. United Services Auto Assn*. (1992) 6 Cal.App.4th 1149, 1158-1159 [financial loss in decreased property value resulting from intentional and negligent misrepresentations in sale of property was not injury to tangible property under general liability policy]; *Warner v. Fire Ins. Exchange* (1991) 230 Cal.App.3d 1029, 1034 [damage to economic interests caused by misrepresentation in sale of real property was not tangible property damage]; *Allstate Ins. Co. v. Interbank Financial Services* (1989) 215 Cal.App.3d 825, 830 [business liability policy covering property damage did not cover economic loss in tax shelter investment resulting from poor professional advice]; *Giddings v. Industrial Indemnity Co*. (1980) 112 Cal.App.3d 213, 219 [strictly economic losses, such as loss of goodwill, investment, or anticipated benefit of a bargain, do not constitute damage or injury to tangible property].)

Portugal argues that her underlying complaint did specifically allege she and her class " 'suffered property damage and/or financial loss . . . .' " However, her use of ellipses in her brief hides the rest of the sentence; the complaint alleged Portugal and her class "suffered property damage and/or financial loss *in the form of unpaid overtime and other wages and benefits*." (Italics added.) Unpaid overtime, wages, and benefits are not property damage. Portugal also quotes her allegation that she suffered " 'actual financial

22

loss and damage to her property rights . . . .' " This conclusory allegation does not even remotely suggest damage to tangible property.

Despite the fact that none of the alleged claims were covered by the insurance policies, Portugal relies on the words "withheld tangible property" which her lawyer craftily inserted into the judgment. This language does not help Portugal. In a default case where there is no answer, the trial court cannot enter a judgment against a defaulting defendant "which awards greater relief than that sought in the plaintiff's complaint." (*In re Marriage of Lippel* (1990) 51 Cal.3d 1160, 1167, citing Code Civ. Proc., § 580[14]) This rule applies if no answer was filed or if, as here, the defendant filed an answer but the court ordered the answer stricken. (Accord, *Matera v. McLeod* (2006) 145 Cal.App.4th 44, 60; *Electronic Funds Solutions, LLS v. Murphy* (2005) 134 Cal.App.4th 1161, 1173-1177.)

On appeal, Portugal says the withheld tangible property was that she had to use gasoline in her car to run errands for her clients. This claim is not discernible from the complaint. Portugal cites a declaration from Real Care CEO Ken Wang, which he filed in the underlying lawsuit in opposition to class certification, and which Portugal attached to her opposition to Western's summary judgment motion. Wang attested Real Care provided clients with "personal in-home care to provide assistance bathing, dressing and grooming, incontinence care, preparation of meals, light housekeeping and laundry, medication monitoring, [and] transportation to shopping and medical appointments . . . ." Customers could hire these "personal attendant[s]" directly, with Real Care serving as a personnel agency, or they could contract with Real Care in which case the "personal

---

[14] Civil Code section 580 provides: "The relief granted to the plaintiff, if there is no answer, cannot exceed that demanded in the complaint, in the statement required by Section 425.11 [statement of damages in personal injury or wrongful death complaint], or in the statement provided for by Section 425.115 [preservation of right to seek punitive damages] . . . ."

attendant" would be on Real Care's payroll. This declaration does not help Portugal. Portugal cites no authority whatsoever for her assertion that employees' use of personal vehicles in the course of their work constitutes a withholding of tangible property by the employer.

Moreover, a judgment in the underlying action should never have been entered that included a claim for "withheld tangible property" that was never alleged in the complaint. "It is imperative in a default case that the trial court take the time to analyze the complaint at issue and ensure that the judgment sought is not in excess of or inconsistent with it. It is not in plaintiffs' interest to be conservative in their demands, and without any opposing party to point out the excesses, it is the duty of the court to act as gatekeeper, ensuring that only the appropriate claims get through. That role requires the court to analyze the complaint for itself--with guidance from counsel if necessary--ascertaining what relief is sought as against each defaulting party . . . ." (*Heidary v. Yadollahi* (2002) 99 Cal.App.4th 857, 868.) The record does not show what evidence Portugal presented at the default hearing to justify the $23 million default judgment. Portugal says Western could not justify summary judgment without producing this evidence. However, the evidence at the default hearing should not have included damages for "withheld tangible property" not alleged in the complaint, because "[t]he court cannot allow a plaintiff to prove different claims or different damages at a default hearing than those pled in the complaint." (*Id.* at p. 868.)

Despite these rules, Portugal's counsel did get the court to sign the underlying judgment with the improper reference to "withheld tangible property." Portugal contends the "finding" that she was "damaged because tangible property was withheld from her, became a binding finding of fact on Western." This language, according to Portugal, supports her claim of "property damage" under the professional liability policy and requires reversal of the summary judgment.

We reject Portugal's assertion that this improper reference is binding and compels reversal of the summary judgment. Without explanation, Portugal cites *Amato, supra*, 53 Cal.App.4th at page 837, in support of this contention. We see nothing on the page cited in *Amato* by Portugal to support the contention that the trial court was bound by the "withheld tangible property" language except perhaps the following quote: " '[I]t is stated to be the general rule that "an insurer who has had an opportunity to defend is bound by the judgment against its insured as to all issues *which were litigated* in the action against the insured." ' " (*Ibid.*, italics added.) But since the "withheld tangible property" language was not in the complaint, it can hardly be said that theory was litigated.

Even assuming for the sake of argument that the underlying complaint could somehow be read to involve "withheld tangible property," there would still be no coverage, because the policies covered loss of use of tangible property only if caused by an " '[o]ccurrence,' " which was defined as an "accident." " 'When one expects or intends an injury to occur, there is no "accident." ' " (*Gonzalez, supra*, 234 Cal.App.4th at p. 1234, quoting *Interinsurance Exchange v. Flores* (1996) 45 Cal.App.4th 661, 669.)[15] Moreover, the policies excluded damage/injury arising from contractual liability or employment.

Even the professional liability policies excluded (1) bodily injury, property damage, or personal injury for which the insured was obligated to pay damages by reason of the assumption of liability in a contract or agreement, and (2) bodily injury or personal injury to an employee of the insured arising out of and in the course of the employment.

---

[15] Intentional acts are not accidents unless some additional, unexpected, independent and unforeseen happening occurs that produces damage (*Gonzalez, supra*, 234 Cal.App.4th at p. 1233, citing *Quan v. Truck Ins. Exchange* (1998) 67 Cal.App.4th 583, 598), and Portugal has not shown any evidence of such a happening.

25

Therefore, even assuming for the sake of argument that Real Care's services constituted healthcare services and home health care services, making them subject to the professional liability policies which defined "[p]rofessional incident" as any negligent act or omission in the furnishing of healthcare services or other professional services described in a Schedule which included "home health care services," and even assuming Real Care's alleged failure to pay their employees could somehow constitute negligence, all of the claims by Portugal and the class were excluded from coverage under the professional liability policies' exclusions for contractual liability and employer's liability.

We conclude Portugal fails to demonstrate that any of her causes of action *may* fall within the scope of the policy. (See *Gonzalez, supra*, 223 Cal.App.4th at p. 1236.) Moreover, beyond the evidence establishing that Portugal's claims are not covered, Western has conclusively established that all of the claims are excluded.

## DISPOSITION

The judgment is affirmed. Western shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)


                                                    MURRAY          , J.



We concur:



    NICHOLSON      , Acting P. J.



    BUTZ           , J.


26